## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**MICHAEL MACALUSO**
**122 Slaymaker Road**
**Mildford, PA 18337**

        *Plaintiff*,
    v.

**APPLE INC.**
**1 Infinite Loop**
**MS:38-3TX**
**Cupertino, CA  95014**

        *Defendant.*

**CASE NO.: 2:21-cv-01361-GEKP**

## APPLE INC.'S OPPOSITION TO
## PLAINTIFF'S MOTION TO PRECLUDE DEFENDANT'S EXPERTS

## TABLE OF CONTENTS

**Page**

I. Introduction................................................................................................1

II. Background................................................................................................3

III. Argument ................................................................................................5

    A. Dr. Hoffmann and Mr. Swonder Will Not Offer Duplicative Testimony. .............5

        1. Apple will call Dr. Hoffmann as its testifying expert and, if necessary, will call Mr. Swonder to testify about the joint inspections that he attended. ........................................................6

        2. Plaintiff cannot dictate which experts Apple calls at trial. ........................9

    B. Dr. Hoffmann Performed His Testing to Respond to Mr. Klitsch's Untimely Opinions and Experiment. ........................................................9

    C. Dr. Hoffmann Timely Disclosed His Opinions Relating to the CT Scans and State of Charge of the Subject iPad. ............................................12

        1. The opinions based on the CT scans were disclosed in both joint reports and are admissible. ........................................................12

        2. The state-of-charge opinion was disclosed and is admissible. ................14

IV. Conclusion ................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Med., Inc. v. Arden Med. Sys., Inc.*,
  No. CIV. A. 87-3059, 1992 WL 346561 (E.D. Pa. Nov. 16, 1992) .......................................13

*Bassi v. Patten*,
  592 F. Supp. 2d 77 (D.D.C. 2009) ...............................................................................12, 13, 14

*Borden v. Ingersoll-Rand Co.*,
  No. 01-CV-5455, 2003 WL 21488511 (E.D. Pa. Jan. 17, 2003)..........................................15

*Bowersfield v. Suzuki Motor Corp.*,
  151 F. Supp. 2d 625 (E.D. Pa. 2001) .......................................................................................8

*Dasho v. City of Fed. Way*,
  101 F. Supp. 3d 1025 (W.D. Wash. 2015).............................................................................14

*Daubert v. Merrill Dow Pharms., Inc.*,
  509 U.S. 579 (1993)............................................................................................................2, 15

*Diawara v. United States*,
  No. CV 18-3520, 2020 WL 6262983 (E.D. Pa. Oct. 23, 2020)................................................9

*Hartle v. FirstEnergy Generation Corp.*,
  7 F. Supp. 510 (W.D. Pa. 2014).............................................................................................6

*Kuiper v. Givaudan, Inc.*,
  602 F. Supp. 2d 1036 (N.D. Iowa 2009)..................................................................................9

*Kushner v. Winterthur Swiss Ins. Co.*,
  620 F.2d 404 (3d Cir. 1980)..................................................................................................10

*Late v. United States*,
  No. 1:13-CV-0756, 2016 WL 8793108 (M.D. Pa. Sept. 20, 2016)..........................................7

*Leefe v. Air Logistics, Inc.*,
  876 F.32d 409, 411 (5th Cir. 1989) ......................................................................................6, 9

*MD Mall Assocs., LLC v. CSX Transp., Inc.*,
  No. 11-4068, 2015 WL 12806503 (E.D. Pa. Dec. 16, 2015).................................................15

*Nicholas v. Pa. State Univ.*,
  227 F.3d 133 (3d Cir. 2000)...................................................................................................10

*Sec. Nat'l Bank of Sioux City, Iowa v. Abbott Labs.*,
　No. C 11-4017-MWB, 2013 WL 12140998 (N.D. Iowa Aug. 13, 2013)................................8

*Tran v. Toyota Motor Corp.*,
　420 F.3d 1310 (11th Cir. 2005) ................................................................................6

*Tunis Bros. Co. v. Ford Motor Co.*,
　124 F.R.D 95 (E.D. Pa. 1989).................................................................................6

*United Healthcare Servs., Inc. v. Cephalon, Inc.*,
　No. CV 17-555, 2019 WL 2994660 (E.D. Pa. July 8, 2019)..................................11

*Univ. of Fla. Research Found., Inc. v. Motorola Mobility LLC*,
　No. 13-61120-CV, 2013 WL 12043502 (S.D. Fla. Dec. 23, 2013)..........................7

*Walker v. Mankey*,
　No. 2:14-CV-01504-LPL, 2018 WL 10230908 (W.D. Pa. Oct. 11, 2018)...............8

## <u>Rules</u>

Fed. R. Civ. P. 26(a)(2)(A)
　..........................................................................................................................9

Fed. R. Civ. P. 30(c)(2)
　..........................................................................................................................8

Fed. R. Evid. 403
　..........................................................................................................................8

Fed. R. Evid. 702 ..................................................................................................2,
　6, 9, 12, 14, 15

Rule 26(a)(i)(2)(B)
　........................................................................................................................14

Rule 26(b)(4)(A)(i)
　........................................................................................................................13

I.      **Introduction**

This is a products liability subrogation action arising out of a house fire caused by a kitchen stovetop burner that was left on and unattended.  The undisputed evidence demonstrates that: (1) the left rear burner of the stovetop was found to be in the "on" position; (2) Plaintiff left combustibles in the form of a cardboard box in proximity to that burner; and (3) the burner generated sufficient heat to ignite that material.  Nonetheless, Plaintiff contends that the fire instead started in an iPad Air 2 (the "subject iPad") on the counter near the stovetop burner that had been left on and unattended.  In accordance with the Court's scheduling order, Apple timely disclosed joint reports of its fire investigation and engineering experts, Dr. Donald Hoffmann and Erik Swonder, who opine that the fire was caused by the unattended stovetop burner and not the subject iPad.

Plaintiff now seeks to preclude Dr. Hoffmann's testimony as "duplicative" of Mr. Swonder's.  Plaintiff also seeks to bar any testimony about testing Dr. Hoffmann performed to respond to the post-disclosure testing and opinions of Plaintiff's expert, David Klitsch.  And, Plaintiff moves to exclude Dr. Hoffmann's opinions that CT scans of the subject iPad show no internal fault in its battery cells and that the subject iPad's state of charge was insufficient to cause the fire.  Each of these requests is meritless.

*First*, Plaintiff's claim that Dr. Hoffmann's and Mr. Swonder's trial testimony will be cumulative is belied by Apple's repeated, express representations that only Dr. Hoffmann will serve as its testifying expert.  As Plaintiff is well aware, if Mr. Swonder is called at trial, it will be to offer factual testimony about the parties' joint inspection of evidence collected from the fire scene—not to offer opinions about the cause of the fire.  Further, even if there were some commonality in their testimony, well-settled authority establishes that Apple still may call both

-1-

witnesses at trial.  And, of course, if Apple ultimately calls only one of Dr. Hoffmann and Mr. Swonder at trial, it is Apple's right (not Plaintiff's) to choose which witness to call.

*Second*, Plaintiff's attempt to preclude Dr. Hoffmann's testing is pure hypocrisy because that simulation was performed solely to respond to the untimely opinions and experiment of Plaintiff's own expert.  Plaintiff thus unsurprisingly fails to establish that Dr. Hoffmann's testing should be excluded under the applicable standard governing evidence disclosed after a deadline. Plaintiff can show no meaningful prejudice from the timing of the disclosure of Dr. Hoffmann's simulation (caused by the untimely opinions and experiment of Plaintiff's own expert), no lack of opportunity to cure any potential prejudice, no disruption to the orderly and efficient conduct of trial of this action, and no bad faith by Apple.  Dr. Hoffmann's post-deadline testing therefore is admissible.

*Third*, the joint reports disclosed Dr. Hoffmann's opinion that the CT scans of the subject iPad show that its battery cells were attacked by fire and did not suffer an internal short circuit. This opinion is fully consistent with the peer-reviewed scientific literature, and is therefore admissible under Federal Rule of Evidence 702 and the standard articulated in *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  Similarly, Dr. Hoffmann disclosed his state-of-charge opinion in the first joint report, which explicitly states that the "dead iPad" was plugged in about 3.5 hours before the fire.  Regardless, Plaintiff fails to prove that the exclusion of this opinion is appropriate under the same standard applicable to Dr. Hoffmann's testing.  Finally, as with the CT scans, Plaintiff fails to even attempt to explain why this opinion would be inadmissible under Rule 702 and *Daubert*.

For these reasons, and as is explained more fully below, Plaintiff's Motion to Preclude Defendant's Experts should be denied in its entirety.

II.     **Background**

On the morning of March 2, 2020, a fire broke out in the kitchen at the home of Michael Macaluso.  *See* ECF No. 25 (First Amended Complaint) ¶ 1.  The fire was contained to the area of the kitchen by the stovetop and caused moderate smoke damage to the rest of the house.  Pl.'s Ex. A (Feb. 14, 2022 Report of Donald Hoffmann and Erik Swonder) at 3.

A joint inspection of artifacts collected from the fire scene by Plaintiff's insurer was conducted on June 24, 2020.  *Id.* at 3.  During that inspection, the parties determined that the left rear burner of the stovetop was on at a medium-high setting.  *Id.*at 17.  The inspection also revealed burned remains of a cardboard multi-pack box of potato chips on and around the stovetop, including portions melted to the stovetop itself.  *Id.*   A second joint artifact inspection was conducted on October 7, 2021, which confirmed the results of the June inspection.  *Id.* at 3.

On February 14, 2022, Apple timely disclosed the joint expert report of Donald Hoffmann, PhD, PE, IAAI-CFI and Erik Swonder, MS, PE, IAAI-CFI of Safety Engineering Labs ("SEL").  *See id.*  Dr. Hoffmann and Mr. Swonder opine that the subject fire was caused when combustible cardboard snack packaging was improperly stored on the stovetop while the stovetop burner was left on and unattended.  *Id.* at 23-24.  The report lists "CT Scans Received from Plaintiff (de Luca Levine)" as one of the materials relied upon in reaching the opinion that "[t]here is no evidence of a failure and/or damage consistent with a failure of the batteries inside the iPad resulting in the fire damage and evidence observed.  The iPad and its associated batteries were attacked by fire and the batteries were dislodged and mechanically damaged post-fire."  *Id.* at 22-23 & App. A.  The report also notes that the subject iPad was "dead" when it was plugged in to charge at 8 a.m., approximately 3.5 hours before the fire, which necessarily means that the subject iPad was not at a full state of charge when the fire began.  *See id.* at 1, 19.

Also on February 14, 2022, Plaintiff disclosed the reports of his experts, David B. Klitsch, Michael B. Eskra, and Dr. Frank T. Ferrese.  That same day, counsel for Apple requested dates for the depositions of those experts.  Apple Ex. 1 (2/14/22 Emails).

On February 28, 2022, Apple timely disclosed a joint supplemental report prepared by Dr. Hoffmann and Mr. Swonder to rebut Plaintiff's expert reports.  Pl.'s Ex. B (Supplemental Report of Donald Hoffmann and Erik Swonder).  Among other things, the supplemental report states that, "[b]ased on SEL's evaluation of [Mr. Eskra's] images *and of the CT scans*, there is no indication of any fault or failure within [Mr. Eskra's] identified area of interest.  This damage appears to be uniform throughout the battery and is consistent with the damage observed in lithium ion batteries that have been attacked by fire."  *Id.* at 17 (emphasis added).

Having received no response to its request for deposition dates, Apple contacted Plaintiff on March 2, 2022, to once again ask for expert deposition dates.  Apple Ex. 2 (2/28-3/17/22 Emails).  Plaintiff's counsel responded on March 3 that "[w]e should have dates for you tomorrow," and asked who Apple's "testifying expert" would be.  *Id.*  In a telephone call on March 4, counsel for Apple informed Plaintiff that "Dr. Hoffmann will be our opinion expert.  We intend for Mr. Swonder to testify primarily regarding his participation in the lab inspections."  *Id.*  To provide further clarification, Apple's counsel thereafter sent Plaintiff's counsel an email that explained that "Mr. Swonder will be providing factual testimony as to his participation and observations from the inspections as outlined in the report.  Dr. Hoffmann is Apple's battery expert and there will be no overlap between the testimony of these witnesses."  *Id.*

On March 7, 2022, having still not received any deposition dates for Plaintiff's experts, Apple informed Plaintiff that Dr. Hoffmann and Mr. Swonder were available for deposition on various dates beginning March 14, after Plaintiff's experts were deposed.  *Id.*  On March 9, Plaintiff

-4-

finally responded to Apple's request for deposition dates, offering only Mr. Klitsch for deposition before the Court-ordered deadline to complete expert depositions. *Id.* The parties thereafter met and conferred and agreed to complete the depositions of Plaintiff's experts by April 1 and the depositions of Dr. Hoffmann and Mr. Swonder by April 8. *Id.*

Despite the parties' agreement to produce each expert's file 48 hours in advance of the expert's deposition, *id.*, Plaintiff produced Mr. Klitsch's file less than 21 hours before his deposition. Apple Ex. 3 (3/23/22 Email). That file included materials related to previously undisclosed testing conducted by Mr. Klitsch on March 4, 2022—after the expert disclosure and rebuttal report deadlines—whereby he held an open lighter flame to a cardboard box of snack foods for one minute and fourteen seconds before the box ignited. Apple Ex. 4 (Klitsch Dep. Tr.) at 57:17-58:18, 216:23-219:3. At his deposition on March 24, Mr. Klitsch also revealed that he held a new, untimely opinion not contained in his expert report: that the subject iPad emitted flames that ignited the cardboard box of chips on the stovetop. *Id.* at 51:4-20, 60:4-11.

In response to Mr. Klitsch's brand-new opinion and post-disclosure testing, Dr. Hoffmann conducted a test on April 7, 2022, during which he forced an iPad Air 2 device to undergo a battery thermal event. Pl.'s Ex. D (Hoffmann Dep. Tr.) at 5:19-7:2, 25:23-28:13. Dr. Hoffmann's simulation demonstrated that the device did not emit any flames or create sufficient energy to ignite cardboard snack packaging during a sudden release of the energy stored in the battery. *Id.*

## III.   Argument

### A.   Dr. Hoffmann and Mr. Swonder Will Not Offer Duplicative Testimony.

Plaintiff first argues that Dr. Hoffmann's and Mr. Swonder's testimony at trial will be duplicative, and in effect that *Plaintiff*—and not Apple—should be able to determine which witness Apple calls. Pl.'s Mem. of Law in Supp. of the Mot. to Preclude Def.'s Experts ("Pl.'s Br.") at 3, 5-7, 11. The Court, however, should reject this gambit out-of-hand: Apple will not call

both witnesses to offer the same testimony and, in any event, Apple (not Plaintiff) has the right to choose the witnesses it will call in its own case-in-chief.

> 1.   <u>Apple will call Dr. Hoffmann as its testifying expert and, if necessary, will call Mr. Swonder to testify about the joint inspections that he attended.</u>

Plaintiff's argument fails at the threshold because Apple has no intention of calling both Dr. Hoffmann and Mr. Swonder to offer the same testimony at trial. Rather, Apple will present Dr. Hoffmann to testify pursuant to Federal Rule of Evidence 702 about the opinions set forth in the joint reports. Mr. Swonder, if he is called at all, will offer factual testimony at trial about the joint inspections that he attended where the parties determined that the left rear stovetop burner was in the "on" position and remnants of a cardboard box were on the stovetop.[1] Plaintiff's argument fails for this reason alone. Indeed, Dr. Hoffmann's and Mr. Swonder's clearly delineated testimony stands in stark contrast to the cumulative testimony in the cases Plaintiff cites, where the excluded expert planned to "vouch[] for" another expert, *Hartle v. FirstEnergy Generation Corp.*, 7 F. Supp. 510, 525 (W.D. Pa. 2014); *Tunis Bros. Co. v. Ford Motor Co.*, 124 F.R.D 95, 98 (E.D. Pa. 1989), or offer "the same" testimony as another expert, *Tran v. Toyota Motor Corp.*, 420 F.3d 1310, 1315 (11th Cir. 2005); *Leefe v. Air Logistics, Inc.*, 876 F.32d 409, 411 (5th Cir. 1989). Plaintiff has no basis to argue otherwise.

Similarly, the fact that Dr. Hoffmann and Mr. Swonder authored joint reports has no bearing on whether their testimony is cumulative. "Courts have found that 'co-authored expert reports aren't exactly uncommon,' and where experts have 'reviewed the same materials and, working together, come to the same opinions,' there is 'no reason why it would be inherently

---

[1]   As a testifying expert, Dr. Hoffmann can and will rely upon the materials and information developed at the joint inspections, so Mr. Swonder's testimony might not be necessary if Plaintiff stipulates to the facts that he would present.

impermissible for them to file a joint report.'" *Late v. United States*, No. 1:13-CV-0756, 2016 WL 8793108, at *1 (M.D. Pa. Sept. 20, 2016) (quoting *Univ. of Fla. Research Found., Inc. v. Motorola Mobility LLC*, No. 13-61120-CV, 2013 WL 12043502, at *8 (S.D. Fla. Dec. 23, 2013)).  That is particularly true here, where Dr. Hoffmann and Mr. Swonder would testify about distinct, non-overlapping matters at trial.

In any event, Plaintiff's purported confusion about "what expert Defendant will call and what opinions they will offer," Pl.'s Br. at 7, is belied by Apple's explicit representations about Dr. Hoffmann's and Mr. Swonder's expected testimony.  On March 4, 2022, one month before their depositions, Apple expressly informed Plaintiff that Dr. Hoffmann is Apple's "battery expert" who would serve as its "opinion expert" at trial, while Mr. Swonder would offer only "factual testimony" about the joint inspections.  Apple Ex. 2.  Similarly, at the first day of Mr. Swonder's deposition on April 4, Apple's counsel stipulated on the record that "there won't be any overlap between the testimony" of the two witnesses, explaining that "Mr. Swonder's testimony is primarily intended to relate to his observations and conclusions stemming from his artifact examination," and that "it's fair to say that opinion testimony about the battery and the Ipad [*sic*] are primarily within the realm of Dr. Hoffman[n], whom you are deposing later this week."  Pl.'s Ex. C at 7:10-8:7.

Were there any doubt, both Dr. Hoffmann and Mr. Swonder reiterated this distinction during their respective depositions.  Dr. Hoffmann unequivocally confirmed that he would testify to the opinions set forth in the reports.  Pl.'s Ex. D at 7:14-19.  Mr. Swonder likewise testified that Dr. Hoffman is the expert who will offer opinion testimony that the subject iPad did not cause the fire.  Pl.'s Ex. C at 23:23-25:17.  Mr. Swonder explained that his own testimony "would be in relationship to the work and analysis I performed at the lab inspections" and that he "would

anticipate it would just be based on the work I've performed … that includes reviewing and examining the site documentation of the fire scene, of the kitchen, of the electrical system, the outlets; my examination of the appliances and other electrical artifacts from the fire loss"—*i.e.*, his work at the joint inspections. *Id.* at 9:6-10:8.

Nevertheless, Plaintiff's counsel proceeded to examine Mr. Swonder at length about the opinions set forth in the joint reports. Because he co-authored the reports, and based upon his qualifications and experience as an electrical engineer and certified fire investigator, *id.* at 29:21-22, Mr. Swonder answered all of those questions. *See generally id.* Of course, experts can and should respond to the questions asked when they are testifying, even if they involve subjects beyond those for which the expert is offered. *See* Fed. R. Civ. P. 30(c)(2) ("A person may instruct a deponent not to answer only" in certain, limited circumstances). Plaintiff, however, cannot then complain about the testimony elicited by his own counsel. *See Bowersfield v. Suzuki Motor Corp.*, 151 F. Supp. 2d 625, 631 (E.D. Pa. 2001) ("'Testimony of an expert on matters within the expert's expertise but outside of the expert's report'" is permissible) (citation omitted).

Finally, even if there were any significant overlap in Dr. Hoffmann's and Mr. Swonder's opinions (there is not), it is well-settled that multiple experts may offer testimony in the same general area of expertise at trial. *See, e.g.*, *Walker v. Mankey*, No. 2:14-CV-01504-LPL, 2018 WL 10230908, at *2 (W.D. Pa. Oct. 11, 2018) ("Fed. R. Evid. 403 does not require that the Court limit the defendants to one of these experts…. If [defendants] choose to use [their time] by proffering the testimony of both doctors, that is up to them."); *Sec. Nat'l Bank of Sioux City, Iowa v. Abbott Labs.*, No. C 11-4017-MWB, 2013 WL 12140998, at *19-20 (N.D. Iowa Aug. 13, 2013) (permitting party to call "all of its experts" to opine on causation, defect, and adequacy of testing in products liability action). That is true even if one of the testifying experts "could have" testified

as to the other expert's opinions. *Diawara v. United States*, No. CV 18-3520, 2020 WL 6262983, at *1 (E.D. Pa. Oct. 23, 2020). Indeed, the cases Plaintiff himself relies upon make clear that they should *not* "be read to impose a precise limit on the number of experts who can testify in a given area," *Leefe*, 876 F.2d at 411, even if there is "some overlap" in their testimony, *Kuiper v. Givaudan, Inc.*, 602 F. Supp. 2d 1036, 1049-50 (N.D. Iowa 2009). Apple's approach here is entirely consistent with those decisions.

2.    <u>Plaintiff cannot dictate which experts Apple calls at trial.</u>

Not content to limit Apple to one expert at trial, Plaintiff takes the unprecedented step of imposing his own preference about which witness Apple can call. It should go without saying that "it is each party's prerogative to decide the most suitable division of labor between its experts." *Diawara*, 2020 WL 6262983, at *2; *see also* Fed. R. Civ. P. 26(a)(2)(A) ("a party must disclose to the other party the identity of any witness *it* may use at trial to present evidence under Federal Rule of Evidence 702") (emphasis added). Plaintiff cites no authority—and there is none—that suggests that a litigant can somehow dictate an opposing party's witness list. Accordingly, if a choice must be made as to which witness to call, then the party that is entitled to make that choice is Apple, and only Apple.

**B.    Dr. Hoffmann Performed His Testing to Respond to Mr. Klitsch's Untimely Opinions and Experiment.**

Plaintiff next seeks to preclude as untimely Dr. Hoffmann's simulation that demonstrated that an iPad Air 2 device with the same state of charge as the subject iPad at the time of the fire lacks sufficient energy to ignite a cardboard box during a battery thermal event. Pl.'s Br. at 7-9. This argument falls flat for at least two reasons.

As an initial matter, Dr. Hoffmann performed this testing only to respond to new opinions and testing—disclosed after the expert disclosure deadline—by Plaintiff's own expert, Mr. Klitsch.

-9-

Pl.'s Ex. D at 5:19-6:9.  As Dr. Hoffmann explained at his deposition, until he read Mr. Klitsch's

deposition testimony in early April, he did not know that Mr. Klitsch would opine that the iPad

emitted a large flame and, based on post-disclosure testing, that the subject iPad was "capable of

igniting a corrugated cardboard carton." *Id.* at 26:25-27:3.  Of course, a litigant "who charges that

the rules were not followed in the district court should himself follow the rules ….  Sauce for the

goose is sauce for the gander." *Kushner v. Winterthur Swiss Ins. Co.*, 620 F.2d 404, 407 (3d Cir.

1980).  Plaintiff thus cannot complain about the response of Apple's expert to the new and

untimely opinions developed by Plaintiff's own expert.

Against this backdrop, Dr. Hoffmann's testing should be admitted under the very authority

that Plaintiff cites.  *See* Pl.'s Br. at 8.  Indeed, all four factors that district courts in the Third Circuit

use to determine whether to exclude evidence disclosed after a deadline swing decisively in

Apple's favor:

> (1) the prejudice or surprise of the party against whom the excluded evidence would
> have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent
> to which allowing the evidence would disrupt the orderly and efficient trial of the
> case or other cases in the court; and (4) bad faith or wilfulness in failing to comply
> with a court order or discovery obligation.

*Nicholas v. Pa. State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000).  Any contrary argument is specious.

*First*, Plaintiff cannot feign surprise about the fact that Apple's expert did additional work

to respond to Mr. Klitsch's late-disclosed opinions.  And Plaintiff's claim of prejudice by the

disclosure of Dr. Hoffman's simulation shortly before his deposition, Pl.'s Br. at 8, rings hollow

in light of the fact that Plaintiff disclosed Mr. Klitsch's own post-deadline experiment *less than 21*

*hours before his deposition*.  Apple Ex. 3.  The sauce for the goose once again is sauce for the

gander:  Plaintiff's own late disclosure of Mr. Klitsch's testing forecloses any claim of prejudice

here.  And Plaintiff's speculation that he might incur "further expert expenses" to respond to Dr.

Hoffmann's simulation, Pl.'s Br. at 9, is insufficient to establish the showing of "excessive"

prejudice required before exclusion is warranted.  *See United Healthcare Servs., Inc. v. Cephalon, Inc.*, No. CV 17-555, 2019 WL 2994660, at *8 (E.D. Pa. July 8, 2019) (having to take additional depositions is insufficient prejudice).

*Second*, Plaintiff had ample opportunity to cure any conceivable prejudice.  Even though Apple had no inkling until hours before Mr. Klitsch's deposition that he had performed an undisclosed experiment, Apple still was able to examine Mr. Klitsch about his testing.  Apple Ex. 4 at 25:6-26:9, 57:17-58:18, 216:23-219:3.  Plaintiff—who reasonably could have anticipated that Dr. Hoffmann would respond to Mr. Klitsch's untimely opinions and testing—likewise had ample time to question Dr. Hoffmann about his own responsive simulation.  Pl.'s Ex. D at 5:19-7:2, 25:23-28:13.  Plaintiff fails to explain why this opportunity was insufficient to explore the details of Dr. Hoffmann's testing in the same manner that Apple did with Mr. Klitsch under similar circumstances.

*Third*, Dr. Hoffmann's testing will not have any impact on the "orderly and efficient trial of the case," which likely will not occur in this action for several more months and need not be delayed at all.

*Fourth*, Plaintiff cannot credibly claim that Apple acted in bad faith.  Dr. Hoffmann testified that he performed his simulation to respond to Mr. Klitsch's previously undisclosed opinion that the iPad emitted a "fireball" that ignited the cardboard box of snacks on the stovetop, and that Dr. Hoffman conducted the test within days of learning of this new opinion.  Pl.'s Ex. D at 5:19-7:2, 26:20-27:9.  There can be no finding of bad faith in these circumstances, as Apple has offered far more than the required "plausible" explanation to defeat exclusion.  *See United Healthcare Servs.*, 2019 WL 2994660, at *8 (E.D. Pa. July 8, 2019).

Accordingly, all four of the factors under the Third Circuit standard weigh in favor of permitting Dr. Hoffmann to testify about his simulation. The Court therefore should reject Plaintiff's misguided attempt to preclude that responsive testimony.

**C.** **Dr. Hoffmann Timely Disclosed His Opinions Relating to the CT Scans and State of Charge of the Subject iPad.**

Finally, Plaintiff contends that certain of Dr. Hoffmann's opinions—that the CT scans of the subject iPad's battery cells showed no evidence that they suffered an internal failure and that the subject iPad's state of charge at the time of the fire was insufficient to have caused the fire— were not disclosed and are inadmissible. Pl.'s Br. at 9-11. Plaintiff, however, mischaracterizes the contents of the joint reports and makes no effort to show that these opinions do not meet Federal Rule of Evidence 702's standard for admissibility.

1. The opinions based on the CT scans were disclosed in both joint reports and are admissible.

Plaintiff baldly claims that neither of Apple's expert reports "made any mentioned [*sic*] that Defendant's experts believed the iPad did not cause the fire because the CT scans of the batteries showed no evidence of an internal failure." Pl.'s Br. at 9. This argument is flat wrong.

The original joint report expressly sets forth the opinion that "[t]here is no evidence of a failure and/or damage consistent with a failure of the batteries inside the iPad." Pl.'s Ex. A at 22-23. That report also lists the CT scans among the materials that Dr. Hoffmann relied upon in rendering his opinions in this case. *Id.* at App. A. As Dr. Hoffmann explained at his deposition, those CT scans were one of the pieces of evidence that formed the basis for this opinion. Pl.'s Ex. D at 30:1-34:8. Of course, exclusion is not warranted where an expert's report reveals a potential opinion and the expert's "deposition testimony explained his opinion in detail." *Bassi v. Patten*, 592 F. Supp. 2d 77, 81 (D.D.C. 2009).

The joint supplemental report states the opinions about the interpretation of the CT scans even more explicitly. Indeed, one of the purposes of that report was to rebut the opinions of Plaintiff's purported battery expert, Mr. Eskra, who defied generally accepted methodology set forth in the peer-reviewed scientific literature and offered his own idiosyncratic interpretation of the CT scans of the subject iPad. Pl.'s Ex. B at 17. The supplemental report states that, "[b]ased on SEL's evaluation of [Mr. Eskra's] images *and of the CT scans*, there is no indication of any fault or failure within [Mr. Eskra's] identified area of interest. This damage appears to be uniform throughout the battery and is consistent with the damage observed in lithium ion batteries that have been attacked by fire." *Id.* (emphasis added). Plaintiff was well-aware that Dr. Hoffman would opine on these bases that the CT scans showed that the subject iPad did not suffer an internal failure.

Tacitly recognizing that Dr. Hoffmann's interpretation of the CT scans in fact was disclosed in the joint reports, Plaintiff quibbles that Apple's experts did not "explain what they saw in the CT scans that led them to" conclude that the battery cells of the subject iPad showed no evidence of internal fault. *Pl.'s Br.* at 10. But this ignores Dr. Hoffmann's extensive deposition testimony about his interpretation of the CT scans, among the many other pieces of evidence he relies upon in reaching this opinion. Pl.'s Ex. D at 30:1-41:5; *see also Advanced Med., Inc. v. Arden Med. Sys., Inc.*, No. CIV. A. 87-3059, 1992 WL 346561, at *2 (E.D. Pa. Nov. 16, 1992) ("Rule 26(b)(4)(A)(i) requires a party to supply 'a *summary* of the grounds for each opinion'" but does not require "a detailed narrative of all the thought processes" experts "engaged in ultimately arriving at their results") (emphasis in original). Moreover, Plaintiff fails to present any evidence suggesting that Dr. Hoffmann's interpretation runs counter to generally accepted scientific methodology. Nor could Plaintiff have offered any such evidence, as Dr. Hoffmann's

-13-

interpretation of the CT scans—unlike Mr. Eskra's—is consistent with the peer-reviewed scientific literature, which establishes that one *cannot* use post-fire imaging alone to determine that a fire was caused by a battery cell's internal fault. Apple Ex. 5 (Tai Nagourney *et al.*, *The Implications of Post-Fire Physical Features of Cylindrical 1865 Lithium-Ion Battery Cells*, Fire Technology (Jan. 2021)).

> ###### 2.   The state-of-charge opinion was disclosed and is admissible.

Plaintiff also claims that Dr. Hoffmann's opinion that the subject iPad's state of charge at the time of the fire was insufficient for a battery thermal event to have caused the fire was not disclosed and is inadmissible under Rule 702. *Pl.'s Br.* at 9-10. This argument again misses the mark.

The original report set forth the factual basis for the state-of-charge opinion, noting that Plaintiff's fiancée "plugged in a dead iPad next to the range at 8 AM" and that the fire was discovered shortly before 11:48 a.m. Pl.'s Ex. A at 1, 19. This information, of course, forms part of the factual predicate for Dr. Hoffmann's opinion that the subject iPad was at a diminished state of charge and so lacked sufficient energy to cause the fire. Pl.'s Ex. D at 25:23-26:19, 28:14-29:18. Further, as Dr. Hoffmann explained at his deposition, other physical evidence set forth in the reports, including CT scans and photographs of the subject iPad and photographs of the fire scene, further permitted him to "evaluate the batteries and know that they were in a low state of charge." Pl.'s Ex. D at 41:7-48:4. This information was more than adequate to satisfy Rule 26(a)(i)(2)(B)'s disclosure requirement. *See Dasho v. City of Fed. Way*, 101 F. Supp. 3d 1025, 1037 (W.D. Wash. 2015) (expert opinions admissible even if set forth "in terms of background information rather than opinions"); *Bassi*, 592 F. Supp. 2d at 81 (expert opinion adequately disclosed where report generally stated "other mechanisms … could have caused" injury).

Regardless, Dr. Hoffman's state-of-charge opinion would be admissible under the four-factor test discussed in Part III(B).  *See supra* pp. 10-11.  Just as with Dr. Hoffmann's simulation, Plaintiff failed to demonstrate prejudice from any untimely disclosure; Plaintiff cured any potential prejudice when his counsel examined Dr. Hoffmann at length about that opinion; the disclosure will have no impact on the conduct of the trial of this action; and there was no hint of bad faith on Apple's part.  And courts in this District routinely permit experts to offer opinions at deposition that reasonably relate to the facts of the case, so long as the opposing party had "an opportunity to depose the expert" like Plaintiff did here.  *See, e.g.*, *MD Mall Assocs., LLC v. CSX Transp., Inc.*, No. 11-4068, 2015 WL 12806503, at *1 n.2 (E.D. Pa. Dec. 16, 2015); *Borden v. Ingersoll-Rand Co.*, No. 01-CV-5455, 2003 WL 21488511, at *3 (E.D. Pa. Jan. 17, 2003).

Finally, Plaintiff's cursory argument that Dr. Hoffmann's state-of-charge opinion is inadmissible under Rule 702, Pl.'s Br. at 10-11, should be rejected summarily because Plaintiff failed to offer any argument that Dr. Hoffmann's methodology is not "scientifically valid" or cannot "be applied to the facts" of this case.  *Daubert*, 509 U.S. at 592-93.  Nor could Plaintiff have done so, as Dr. Hoffmann's simulation disclosed before his deposition demonstrates that the opinion is solidly grounded in well-accepted science and directly tied to the facts of this case.

## IV.    Conclusion

For the foregoing reasons, Apple respectfully requests that the Court deny Plaintiff's Motion to Preclude Defendant's Experts.

Dated: May 19, 2022                         Respectfully submitted,

By: */s/ Basil A. DiSipio*
        Basil A. DiSipio, Esquire
        PA ID No. 28212
        Lavin, Cedrone, Graver, Boyd & DiSipio
        190 N. Independence Mall West, Suite 500
        Philadelphia, PA 19106
        Email: bdisipio@ lavin-law.com

Phone: (215) 627-0303
Fax: (215) 627-2551

Stephen M. Copenhaver, Esquire, *pro hac vice*
ArentFox Schiff LLP
1185 Avenue of the Americas, Suite 3000,
New York, NY 10036
Email: Steve.Copenhaver@afslaw.com
Phone: (312) 358-5648

*Attorneys for Defendant Apple Inc.*

NY:54919002.9

-16-