**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MICHAEL MACALUSO<br>122 Slaymaker Road<br>Mildford, PA 18337<br><br>          *Plaintiff,*<br>   v.<br><br>APPLE INC.<br>1 Infinite Loop<br>MS:38-3TX<br>Cupertino, CA  95014<br><br>          *Defendant.* | CASE NO.: 2:21-cv-01361-GEKP |

**DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF MOTION TO EXCLUDE
<u>TESTIMONY OF DAVID KLITSCH AND MICHEAL ESKRA</u>**

## TABLE OF CONTENTS

Page

I. Introduction ................................................................................................................... 1

II. Argument ...................................................................................................................... 2

    A. Mr. Klitsch's Untimely Opinions Are Not Reliable And Do Not Fit The Facts Of This Case. ........................................................................................... 2

        1. Plaintiff fails to justify the untimely disclosure of Mr. Klitsch's new opinion. ............................................................................................. 2

        2. Mr. Klitsch's methodology is unreliable because he ignores that the V pattern places the left rear burner in the area of origin. ................... 3

        3. Plaintiff fails to show that Mr. Klitsch's methodology in excluding the unattended stovetop burner is reliable. ............................................... 6

        4. Plaintiff fails to show that Mr. Klitsch's opinion that the half-charged subject iPad had sufficient energy to cause the fire is supported by the facts. ................................................................................ 7

    B. Mr. Eskra Is Not Qualified To Opine About The Subject iPad's Battery Management System, And His Opinions Are Unreliable And Do Not Fit The Facts Of This Case. ........................................................................................ 8

        1. Mr. Eskra admits that he is not an expert in battery management systems. ................................................................................................... 8

        2. Mr. Eskra's methodology defies the peer-reviewed literature and amounts to nothing more than pure conjecture. ...................................... 9

        3. Mr. Eskra's "exemplar" testing does not fit the facts of this case. .......... 11

III. Conclusion .................................................................................................................. 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allstate Insurance Co. v. Anderson*,
    No. 15-2651, 2016 WL 2939506 (E.D. Pa. May 23, 2016) ................................................. 5, 6

*Auto-Owners Ins. Co. v. Makita USA, Inc.*,
    No. 20-cv-220-wmc, 2021 WL 6196975 (W.D. Wisc. Dec. 30, 2021) ............................ 10, 11

*Chartier v. Brabender Technologie, Inc.*,
    2011 WL 4732940 (D. Mass. Oct. 5, 2011) ............................................................................ 8

*Daubert v. Merrill Dow Pharms., Inc.*,
    509 U.S. 579 (1993) ...................................................................................................... 1, 9, 12

*Mems v. City of St. Paul, Dep't of Fire & Safety Servs.*,
    327 F.3d 771 (8th Cir. 2003) ................................................................................................... 9

*Nelson v. DeVry, Inc.*,
    No. CIV.A. 07-4436, 2009 WL 1213640 (E.D. Pa. Apr. 23, 2009) ......................................... 2

*Thompson v. Doane Pet Care Co.*,
    470 F.3d 1201 (6th Cir. 2006) ................................................................................................. 8

*Werth v. Hill-Rom, Inc.*,
    856 F. Supp. 2d 1051 (D. Minn. 2012) .................................................................................... 3

**Rules**

Federal Rule of Evidence 702 ...................................................................................... 1, 9, 12

**Other Authorities**

Celina J. Mikolajczak *et al.*, *A Scientific Methodology for Investigation of a
    Lithium Ion Battery Failure*, IEEE (2007) ............................................................................... 9

I. **Introduction**

Plaintiff's case hinges on the preposterous notion that an unattended stovetop burner generating a temperature of over 900 degrees did not ignite a cardboard box of chips left on the stovetop and start the fire at issue. Despite this obvious cause, Plaintiff theorizes that a half-charged iPad Air 2 device (the "subject iPad") on the counter a few inches from the unattended lit burner actually caused the fire. To make his case, Plaintiff stacks the unreliable opinion of David Klitsch on top of the unreliable opinion of Michael Eskra, and has his third expert, Dr. Frank Ferrese, rely on those faulty opinions. As demonstrated in Apple's opening brief, neither Mr. Klitsch's nor Mr. Eskra's opinions can support this house of cards.

Nothing in Plaintiff's opposition suggests that either putative expert's opinions are admissible under Federal Rule of Evidence 702 or *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Indeed, Plaintiff fails to meaningfully engage with Apple's arguments to exclude their testimony at all, choosing instead to regurgitate Mr. Klitsch's and Mr. Eskra's respective reports while ignoring their sworn testimony that establishes the unreliability of the opinions set forth in their reports.

With respect to Mr. Klitsch, Plaintiff fails to address the untimeliness of his new opinion that the cardboard box on the stovetop was the first material ignited in the fire. Plaintiff similarly ignores Mr. Klitsch's multiple admissions at deposition that: (1) the physical evidence establishes that the area of origin included the unattended stovetop burner, (2) he has no factual basis to opine that the subject iPad was capable of igniting the cardboard box found on the stovetop, and (3) he can point to no testing or published literature that might support the outlandish idea that falling dishes could exert force perpendicular to gravity sufficient to engage the "push-to-turn" control of the burner.

Likewise, Plaintiff's opposition ignores Mr. Eskra's deposition testimony that he lacks expertise in battery management systems, which is precisely what Mr. Eskra claims was the source of the defect in the subject iPad.  Nor can Plaintiff justify Mr. Eskra's attempt to divine evidence of a short circuit from CT scans alone, in defiance of the peer-reviewed scientific literature.  In fact, the single article that Plaintiff cites in defense of Mr. Eskra's flawed methodology explains that CT scans may only be used to establish causation when interpreted as part of a multi-factor, "systematic" examination of the evidence that Mr. Eskra made no attempt to perform here.  And, Plaintiff's opposition fails to rebut Apple's showing that Mr. Eskra's opinions based on "exemplar" testing of other iPad models are unreliable.

**II.     Argument**

    **A.     Mr. Klitsch's Untimely Opinions Are Not Reliable And Do Not Fit The Facts Of This Case.**

        1.     <u>Plaintiff fails to justify the untimely disclosure of Mr. Klitsch's new opinion.</u>

At the outset, Plaintiff's opposition does not dispute that Mr. Klitsch's new opinion regarding the first material ignited in the fire was untimely and fails to even hazard a justification for this untimely disclosure.  *See generally* ECF No. 43-1 ("Opp'n").  This silence is tantamount to a concession.  *See, e.g.*, *Nelson v. DeVry, Inc.*, No. CIV.A. 07-4436, 2009 WL 1213640, at *10 (E.D. Pa. Apr. 23, 2009) ("Failure to address even part of a motion in a responsive brief may result in that aspect of the motion being treated as unopposed.").

Plaintiff instead attempts to recast Mr. Klitsch's original opinion—that the first material ignited was the cabinets several feet above the subject iPad—as materially the same as his new opinion—that it was actually the cardboard box of chips, the remnants of which were found melted onto the stovetop.  Opp'n at 17-19.  Plaintiff claims that, "[i]n the grand scheme of Plaintiff's claim and Mr. Klitsch's opinion …, the first material ignited matters very little." *Id.* at 18.  Not so.

NFPA 921 directs fire investigators to identify the first fuel ignited as part of the process of testing causation hypotheses, and warns that "[s]imply identifying … an ignition source by itself does not and cannot describe how a fire came to be." NFPA 921, § 19.4.4.1. Because "[f]ire results from the interaction of fuel, an oxidant, and an ignition source," where no combustible material is located near an artifact that is suspected of causing a fire, that artifact cannot be deemed to be a competent ignition source and must be excluded under NFPA 921. *See id.*; *see also Werth v. Hill-Rom, Inc.*, 856 F. Supp. 2d 1051, 1061 (D. Minn. 2012) (NFPA 921 requires investigator to determine "the circumstances that brought the ignition source in contact with the first fuel ignited"). Mr. Klitsch's changed conclusion as to the first material ignited therefore fundamentally alters his opinions and must be excluded. *See* ECF No. 34-1 ("Mot.") at 8-9.

        2.    <u>Mr. Klitsch's methodology is unreliable because he ignores that the V pattern places the left rear burner in the area of origin.</u>

All but failing to address Apple's argument that Mr. Klitsch ignored the physical evidence establishing that the unattended burner was in the area of origin of the fire, *see* Opp'n at 9-15, Plaintiff curiously claims that "[t]he witnessed burn patterns were [Mr. Klitsch's] primary piece of evidence in determining that the fire originated to the left of the stove." *Id.* at 15. But Mr. Klitsch admitted that the V pattern of fire and smoke damage in the kitchen actually *includes* the stovetop burner. Apple Ex. D (Klitsch Tr.) at 199:3-201:104, Ex. 13. His confirmation of the markup of the V-pattern in a photograph of the fire scene attached as Exhibit 13 to his deposition established this indisputable fact:



*Id.*

The other physical evidence that Plaintiff cites cannot salvage Mr. Klitsch's faulty methodology that runs contrary to the physical evidence. *See* Opp'n at 15. The notion that the fire would have burned the refrigerator if it started two inches to the right of Mr. Klitsch's circumscribed area of origin, *id.*, is belied by his admission that he conducted no tests and reviewed no studies to determine to what degree, if any, that slight adjustment would alter the V pattern. Apple Ex. D at 180:8-181:12. And the "mass loss"—*i.e.*, the hole in the wall above the counter to the left of the stovetop—that Plaintiff points to in fact was caused by the fire department's suppression and overhaul efforts, not the fire itself. Apple Ex. C (Winters Tr.) at 79:16-80:4; Apple Ex. HH (O'Brien Tr.) at 54:12-55:13.

Nor does Plaintiff's citation to the report of Jeffrey Winters, the Pennsylvania State Police fire marshal, Opp'n at 15, somehow resuscitate Mr. Klitsch's opinion. Indeed, Trooper Winters, just like Mr. Klitsch, admitted in his deposition that the V pattern includes the left rear burner:



Apple Ex. C (Winters Tr.) at 104:10-109:13 & Apple Ex. GG (Ex. 5 to Winters Tr.).

The V pattern is crucial evidence of the area of a fire's origin, and nothing in NFPA 921 permits an expert to shift that pattern based solely on the testimony of interested witnesses. Mot. at 11-12. Mr. Klitsch's deviation from the generally accepted methodology of NFPA 921 on this point is far from "a distinction without any relevance." *See* Opp'n at 14. Indeed, Plaintiff's expert electrical engineer, Dr. Ferrese, admits that the sole reason he is able to exclude the stovetop burner as a cause of the fire is because Mr. Klitsch opines that it was not in the area of origin. Apple Ex. J (Ferrese Tr.) at 95:20-96:25, 98:8-16. Thus, Plaintiff's entire house of cards rests on Mr. Klitsch's failure to comply with NFPA 921.

*Allstate Insurance Co. v. Anderson*, No. 15-2651, 2016 WL 2939506 (E.D. Pa. May 23, 2016), is of no help to Plaintiff. *See* Opp'n at 13. In that case, Mr. Klitsch was permitted to testify as to his investigation into a house fire in accordance with NFPA 921 and identified the area of origin based on the physical evidence of the fire alone. *Anderson*, 2016 WL 2939506, at *2. In stark contrast to the blind eye Mr. Klitsch turned toward the lit stovetop burner in this case, he

excluded a heater found in the area of origin in *Anderson* by "test[ing] a 'similar' properly functioning heater to determine whether a properly functioning heater was capable of producing sufficient heat to ignite nearby clothing." *Id.* at *3 (footnote omitted).  Also contrary to what he did in this case, there Mr. Klitsch critically evaluated the resident's statements and rejected the self-serving claim that the resident disposed of the cigarettes he was smoking on the day of fire in a soda can.  *Id.* at *7.  Here, however, Mr. Klitsch demonstrably failed to consider *all* of the evidence and failed to apply NFPA 921 in the even-handed manner that standard requires.

     3. <u>Plaintiff fails to show that Mr. Klitsch's methodology in excluding the unattended stovetop burner is reliable.</u>

Plaintiff's opposition also fails to show that Mr. Klitsch's exclusion of the stovetop burner is based upon a reliable methodology.  Unable to justify Mr. Klitsch's reliance only on "common sense" for the wild notion that falling debris somehow pushed in the burner control knob and then turned it to the "on" position, Plaintiff instead points to NFPA 921's general admonition not to attribute cause to an appliance merely because it is present at the fire scene.  Opp'n at 15-16 (citing NFPA 921, § 25.3.2).  But § 25.3.2 explicitly provides that this admonition applies only when "'the degree of damage to the appliance *is not appreciably greater than the rest of the fire origin*.'"  Opp'n at 16 (*quoting* NFPA 921, § 25.3.2) (emphasis added).  That is demonstrably not the case here:




In contrast to the stock photo from § 25.3.2 on the left that depicts a virtually pristine area behind and above a stovetop, the picture on the right of the fire scene at Plaintiff's residence shows extensive damage to the stovetop and surrounding area, including the wall behind it, the microwave above it, and the cabinets to the right of it. The physical evidence therefore prevents the stovetop burner from being excluded under NFPA 921 § 25.3.2.

Plaintiff also takes issue with the fact that Apple's experts do not explain *why* Plaintiff or one of his household members left the stovetop burner on. Opp'n at 17. Of course, Plaintiff does not and cannot cite any authority to suggest that Apple has any obligation to offer such an explanation. Regardless, it is not difficult to imagine that parents rushing to get out the door with two young children might have inadvertently left a stovetop burner on. The Court therefore should disregard this attempt to deflect attention away from the unattended stovetop burner.

    4.    <u>Plaintiff fails to show that Mr. Klitsch's opinion that the half-charged subject iPad had sufficient energy to cause the fire is supported by the facts.</u>

Finally, Plaintiff's opposition fails to show that Mr. Klitsch has any factual basis for concluding that the subject iPad was a competent ignition source. Plaintiff alludes to "videos [Mr. Klitsch] has seen of lithium ion batteries failing," Opp'n at 19, but fails to explain whether these videos depicted iPad batteries or batteries of the same size and energy as the subject iPad's battery. This silence speaks volumes, particularly in the face of Dr. Hoffmann's testing showing that an iPad Air 2 at the same state of charge as the subject iPad on the morning of the fire does not emit flames during a battery thermal event and so is incapable of igniting a cardboard box. Apple Ex. N (Hoffmann Tr.) at 6:19-25, 25:7-26:19.

**B.     Mr. Eskra Is Not Qualified To Opine About The Subject iPad's Battery Management System, And His Opinions Are Unreliable And Do Not Fit The Facts Of This Case.**

1.    <u>Mr. Eskra admits that he is not an expert in battery management systems.</u>

Plaintiff's attempt to explain away Mr. Eskra's admission that he is not an expert in battery management systems, Opp'n at 23, falls flat because it ignores Mr. Eskra's testimony altogether. Instead, Plaintiff points to Mr. Eskra's report, where he states that the cause of the short "could" be any of several hypothetical defects, and "it is possible that" the battery management system "did not perform as needed." *Id.*

Of course, "expert witnesses should generally be held to their testimonial concessions, particularly where those concessions contradict their earlier expert reports." *Chartier v. Brabender Technologie, Inc.*, No. CIV.A. 08-40237-FDS, 2011 WL 4732940, at *7 (D. Mass. Oct. 5, 2011). Indeed, the very purpose of expert depositions is for the expert to "supplement, elaborate upon, explain and subject himself to cross-examination upon his report." *Thompson v. Doane Pet Care Co.,* 470 F.3d 1201, 1203 (6th Cir. 2006). Accordingly, Plaintiff cannot simply ignore Mr. Eskra's admission that he lacks the expertise necessary to support his opinions.

In any event, Plaintiff's argument on this point is devoid of any evidence to support the notion that Mr. Eskra somehow got it wrong when he testified that he is not a battery management system expert. If that actually were the case, then surely Plaintiff could have followed up with questions at the deposition to correct the testimony, provided a declaration from Mr. Eskra stating as much, or pointed to scholarly papers by Mr. Eskra relating to battery management systems. Plaintiff's failure to make any attempt to do of these things here is telling.

-8-

### 2. Mr. Eskra's methodology defies the peer-reviewed literature and amounts to nothing more than pure conjecture.

Mr. Eskra, alone among all battery experts and contrary to the only testing published in the peer-reviewed scientific literature, claims the unique ability to determine that a battery cell suffered an internal fault solely by looking at post-fire CT scans of the cell. To add insult to injury, Mr. Eskra opines that this supposed short circuit that only he can see was caused by some hypothetical defect that neither he nor anybody else can identify. Nothing in Plaintiff's opposition suggests that this "methodology" is sufficient under Rule 702 and *Daubert*. *See* Opp'n at 19-25.

First, Plaintiff attempts to manufacture support for Mr. Eskra's practice of conjuring short circuits out of CT scans alone by pointing to a paper presented by its authors at a conference in 2007. Opp'n at 24. However, Mr. Eskra failed to identify that paper at his deposition or include it in his reliance materials produced before his deposition. Apple Ex. F (Eskra Tr.) at 167:20-25, 225:11-19, 234:8-16, 249:11-250:20. This failure to timely disclose this supposed support for his opinion so that he could be cross-examined on it is by itself sufficient to exclude the paper in this case. *See, e.g.*, *Mems v. City of St. Paul, Dep't of Fire & Safety Servs.*, 327 F.3d 771, 779 (8th Cir. 2003) (affirming exclusion of expert testimony where expert failed to disclose notes relied upon in forming opinion).

Moreover, Plaintiff failed to include a copy of the 2007 paper with his opposition. A review of that article reveals why Plaintiff made this strategic choice. The authors of the paper explained that, to determine that a cell experienced an internal short circuit, a "systematic approach" is required that considers the totality of over a dozen factors. Apple Ex. II (Celina J. Mikolajczak *et al.*, *A Scientific Methodology for Investigation of a Lithium Ion Battery Failure*, IEEE (2007)) at 1-6. This thorough investigation requires obtaining "information on the device background, usage history, and the incident itself," "dissecting the remains of the incident system and battery pack,"

including "the important step" of unwinding the cells "when trying to identify a specific point of failure," "conducting visual, X-ray, and electron-microscope examinations of failed and exemplar cells, and electrical testing of charging and battery protection system components." *Id.* at 1, 4. While the authors recognize that CT scans may be an "excellent tool" to use as part of this systematic examination, *id.* at 4, they do not suggest that interpretation of CT scans in isolation can permit an investigator to reach a reliable conclusion as to whether the battery cell experienced an internal fault. Nor would any such suggestion be scientifically valid, as the peer-reviewed literature establishes that it is impossible to determine from CT scans alone whether internal damage to a cell is due to fire attack or a short circuit. Apple Ex. O at 1716, 1718, 1721.

Here, of course, Mr. Eskra made no effort to conduct the sort of "systematic" investigation called for by the 2007 paper upon which Plaintiff claims Mr. Eskra now purportedly relies. Mr. Eskra admits that he knows nothing about the subject iPad's background or usage history. Apple Ex. F (Eskra Tr.) at 155:22-25, 158:6-10. He failed to perform the "important" task of unwinding the cells of the subject iPad. *Id.* at 266:7-14. Simply put, Mr. Eskra did nothing beyond apply his own peculiar interpretation of the CT scans to come to his conclusion about the subject iPad months before considering any other evidence in this case. *Id.* at 143:24-144:17, 187:1-19.

Unable to find support anywhere in the scientific community or the published peer-reviewed literature for Mr. Eskra's "methodology," Plaintiff instead points, Opp'n at 20 & 24, to an unpublished order from Wisconsin permitting Mr. Eskra to testify in a case involving a fire allegedly caused by a drill battery. *Auto-Owners Ins. Co. v. Makita USA, Inc.*, No. 20-cv-220-wmc, 2021 WL 6196975 (W.D. Wisc. Dec. 30, 2021). Unlike here, Mr. Eskra in that case completed a "systematic" investigation like that called for by the 2007 paper in reaching his conclusions. *Id.* at *4. Further, Mr. Eskra "identif[ied] a design defect" in the drill's battery

management system "based on testing" completed by a colleague with expertise in battery management systems that involved "the same model" of battery pack contained in the drill at issue. *See id.* at \*5. In other words, Mr. Eskra in that case engaged in the sort of multi-factor analysis, including testing performed by a qualified battery management system expert of the exact model of battery at issue, generally accepted by the scientific community when it comes to battery fire investigations. That, of course, is a far cry from the confirmation-bias-riddled "investigation" supporting Mr. Eskra's opinions in here.

Finally, Plaintiff makes virtually no attempt to respond to Apple's argument that it is pure speculation for Mr. Eskra to opine that the supposed short circuit he perceives in the CT scans was caused by a defect in the subject iPad. In fact, Plaintiff concedes that Mr. Eskra "testified honestly" that he has no idea what supposed defect might have caused the subject iPad's battery cell to short circuit. Opp'n at 25. For the reasons set forth in Apple's opening brief, then, Mr. Eskra's opinion that the subject iPad somehow was defective cannot be credited. Mot. at 26-28.

3.  Mr. Eskra's "exemplar" testing does not fit the facts of this case.

Plaintiff's cursory response to Apple's showing that Mr. Eskra's "exemplar" testing of other iPad models does not fit the facts of this case, Opp'n at 25-26, is unavailing. Indeed, while Plaintiff asserts that the testing is "reliable" because of Mr. Eskra's "understanding" that the iPad models from many years before and after the subject iPad was manufactured "would have had a similar battery management system," Plaintiff does not—and cannot—cite to any *evidence* to support this bald claim. Unlike Mr. Eskra's testing of identical battery models that was approved in *Makita*, 2021 WL 6196975, at \*5, his testing of widely disparate iPad devices in this case can shed no light on whether the subject iPad somehow was defective. Accordingly, his opinions based on that dissimilar testing should be excluded for the reasons set forth in Apple's opening brief. Mot. at 29-32.

### III. Conclusion

For the reasons set forth above and in Apple's opening brief, the opinions of both Mr. Klitsch and Mr. Eskra should be excluded in their entirety under Federal Rule of Evidence 702 and *Daubert*.

Dated: May 26, 2022                Respectfully submitted,

By: */s/ Basil A. DiSipio*
Basil A. DiSipio, Esquire
PA ID No. 28212
Lavin, Cedrone, Graver, Boyd & DiSipio
190 N. Independence Mall West, Suite 500
Philadelphia, PA 19106
Email: bdisipio@ lavin-law.com
Phone: (215) 627-0303
Fax: (215) 627-2551

Stephen M. Copenhaver, Esquire, *pro hac vice*
ArentFox Schiff LLP
1185 Avenue of the Americas, Suite 3000,
New York, NY 10036
Email: Steve.Copenhaver@afslaw.com
Phone: (312) 358-5648

*Attorneys for Defendant Apple Inc.*

NY:54925899.9