IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MICHAEL MACALUSO**<br>**Plaintiff**<br>v.<br><br>**APPLE INC.**<br>**Defendant** | **CIVIL ACTION NO.:**<br>**2:21-CV-01361-GEKP** |

**PLAINTIFF'S SUR REPLY IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE DAVID KLITSCH AND MICHAEL ESKRA**

Plaintiff, by and through counsel, hereby files the within Sur Reply in opposition to Defendant's Motion.

**I.   INTRODUCTION**

Defendant has attacked David Klitsch and Michael Eskra by manipulating and distorting the facts, and more importantly their opinions which include the actual bases for same. Defendant then attacked those falsehoods as being improper, which were wrongly held out as the opinions and bases of Plaintiff's experts. There is no actual conflict between the authored reports and deposition testimony of Mr. Klitsch and Mr. Eskra. Defendant misrepresents their testimony or hides other critical evidence or deposition testimony from the Court's view.

In some cases, the Defendant actively misled. For example, Defendant wrote, "Plaintiff attempts to manufacture support for Mr. Eskra… by pointing to a paper presented by its authors at a conference in 2007. However, Mr. Eskra failed to identify that paper at his deposition or include it in his reliance materials produced before his deposition." *See* Reply, ECF Doc. 45 at 12. Defendant further argued that this failure to disclose deprived it of the right to cross-examine. Yet, this statement is materially false. The paper was not only cited in Mr. Eskra's report and but also discussed at his deposition. *See* Mike Eskra Report, ECF No. 42-7, 20. Mike Eskra Dep. Tr., ECF No. 43-9, 213:17- 217:24. As the cited portion of deposition transcript points out, Mr. Eskra also

referred to other scientific, peer-reviewed articles which support and inform his methodology in addition to the one paper mentioned above.

In order to address certain misstatements and mischaracterizations, Plaintiff submits the affidavits of Michael Eskra and David Klitsch. *See* Exhibit J, David Klitsch Affidavit and Exhibit K, Michael Eskra Affidavit. These affidavits are being submitted to address Defendant's arguments that the reports of Eskra and Klitsch do not constitute admissible evidence, notwithstanding the Defendant's own use of the same as exhibits in its motion for summary judgment and motion to exclude. The affidavits are also being submitted to more fully demonstrate the propriety of the methodology employed by both experts. The purpose of these affidavits are not to provide any additional opinions or testimony.

## II.   SUMMARY OF THE DISPUTE

While Plaintiff contends that it has met its burden by way of its original response, corresponding exhibits and attached affidavits, it may also be useful to provide a brief overview of the nature of the dispute.

The Defendant argues that the electric range, rather than the iPad, caused the fire. As its chief piece of evidence in support, the Defendant points to the fact that one of the controls to the range was found to be in the "on" position at the time of the evidence exam on June 25, 2020. While the Plaintiffs' experts conclude the control was moved into that position after the fire had already begun, likely when the cabinets and microwave fell onto the stove or during the fire suppression efforts, the Defendant disputes the same.

However, the Defendant does not offer any alternative explanation as to how the control ended up in that position. Defendant's expert himself acknowledged that he hasn't "identified actual, you know, remains of pots or cookware on that burner. There's no witness information

that describes; there's no testimony to cooking at the time." The same expert admitted that he didn't "know why it was turned on or left on." *See* Exhibit L, Erik Swonder Dep. Tr. Volume II, at 61-62.

In sum, the Defendant rejects Mr. Macaluso's testimony that he wasn't using the cooktop that morning, and by way of the instant motion, argues that Klitsch isn't reliable because he arrived at a different conclusion. The Defendant argues that Mr. Klitsch "uncritically" accepted the testimony of Mr. Macaluso when he said that he was not using the cooktop on the day of the fire. Yet, the Defendant does not offer any support for its position that Mr. Klitsch must reject Macaluso's testimony lest his opinion be rendered inadmissible. In addition to these important witness observations, Klitsch articulated the basis for his origin determination; the directional fire patterns which demonstrate that the fire spread from the area to the left of the range to the right, the "mass loss" of area to the left of the range, and the timeline, among other things.

Defendant's experts reviewed the same physical evidence, the same witness statements, and the same deposition transcripts as Klitsch, but selectively applied more weight to that singular piece of evidence which benefitted their client the most. Instead of rejecting the Macaluso testimony, Mr. Klitsch determined that it was consistent with his own observations at the site and in the lab; there was no evidence that anyone was cooking at the time of the fire and fire patterns demonstrate the fire originated to the left of the range.

As mentioned above, Defendant's experts do *not* contend that Mr. Macaluso or Ms. Tiger were cooking on the range before the fire and left it unattended, as there were no pots or pans or cooking-related items found on the range after the fire. Defendant's experts do not offer any explanation for the position of the control, yet scoff at the very idea that the controls could have been moved by falling debris or firefighters after the fact.

At their heart, each of the Defendant's arguments go to the weight of the evidence and are meant to be resolved by the jury.

### III.   ARGUMENT

1. <u>Mr. Klitsch considered all of the evidence and his methodology tracked NFPA 921 and the scientific method.</u>

The Defendant fails to demonstrate why the methodology employed by Mr. Klitsch is suspect or his opinion unreliable. Instead, Defendant now argues that Mr. Klitsch admitted or conceded that the area of the fire's origin included the range. Again, this is simply untrue. Mr. Klitsch did not admit that the area of origin included the stovetop burner nor did he ever suggest that he had no basis to opine that the subject iPad could not have ignited a cardboard box. See Exhibit J, David Klitsch Affidavit. As demonstrated further by the attached affidavit, Mr. Klitsch relied upon the methodology endorsed by NFPA 921 in order to arrive at his opinions. Mr. Klitsch's opinion that the controls to the range were moved during, or after, the fire, is (a) supported by the other evidence which exists and based upon (b) his many years of experience and thousands of investigations he's conducted.

As mentioned in Plaintiff's original response to Defendant's motion, Mr. Klitsch identified an additional fuel item in the cardboard chip box material from Costco which could have served as the first material ignited by the iPad after reviewing the Defendant's expert report. True to form, the Defendant now seeks to preclude, as untimely, Mr. Klitsch for mentioning a fact discussed by the Defendant's own experts in its own report. The existence of a Costco cardboard chip box in the area of the countertop or the adjacent range does not render such an observation untimely where Defendant was already aware of the existence of the chipbox. It does not make Mr. Klitsch's opinion unreliable in any way, just the opposite is true. The competent investigator

is expected to consider all available evidence and revisit his opinions in light of all of the evidence when it becomes available. The existence of the cardboard box supports Mr. Klitsch's opinion that the iPad caused the fire.

Second, Mr. Klitsch did not ignore the "V" pattern depicted in the various photos as the Defendant suggests. In fact, he studied it closely, observing that the line of demarcation on the right side of the range's control panel were identical on both the front and back of the control panel. As discussed in Plaintiff's original response in opposition, this indicated to him, among other things, that the fire originated to the left of the stove. Thus, he was able to exclude the range from his origin determination, and eliminate it as a cause of the fire.

In its reply, the Defendant again makes every attempt to confuse the issue suggesting that the term "V" pattern is interchangeable with the term "area of origin." They are not. *See* Exhibit J, David Klitsch Affidavit. The "V" is used to describe a fire pattern which spreads up and outward. Relying upon NFPA 921 to guide him, Mr. Klitsch describes how fire effects form lines of demarcation. These lines of demarcation often define the boundaries of the "V" pattern. However, the apex of "V" defines the area of origin. *See* Exhibit J, David Klitsch Affidavit.

As further evidence demonstrating Defendant's tendency to misrepresent Mr. Klitsch's opinion and then attacking the misrepresentation as improper, Defendant suggests that Mr. Klitsch's reference to "mass loss" merely refers to the "hole in the wall above the counter to the left of the stovetop..caused by the fire department's suppression and overhaul efforts, not the fire itself." *See* Reply, ECF Doc. 45 at 12. Yet, again, Defendant misleads here. The use of the term "mass loss" describes Mr. Klitsch's observation of the most severe fire damage to the upper wooden cabinetry, directly above the origin of the fire at the countertop, to the left of the range. It does not refer to the hole punched in the wall by firefighters. *See* Exhibit J, David Klitsch Affidavit.

Third, Defendant's chief argument is that the range must be included within Klitsch's area of origin because it is close in proximity to the countertop he determined was the actual area of the fire's origin. In other words, the Defendant argues that Mr. Klitsch can't possibly be believed or his methodology was flawed *unless* he includes the range within the origin because the range is located so close to the countertop. Yet, NFPA 921 § 25.3.2 specifically cautions against this practice; the inclusion of an appliance within the area of origin merely based upon its proximity to an area of greater damage. While Defendant argues that the NFPA sample photo and the subject range are dissimilar because the subject kitchen sustained greater damage, it cannot be disputed that the area to the left of the range suffered the deepest charring and most damage. The right side of the stove is virtually undamaged, and the control knobs on the right side are still intact. Mr. Klitsch faithfully considered NFPA 921 § 25.3.2 in determining his area of origin.

Finally, Defendant does not challenge Mr. Klitsch's opinion that lithium ion batteries pose a competent ignition source for a fire. Instead, it suggests that Klitsch can't opine that these specific lithium ion batteries pose a competent ignition source. As its only support of this position, the Defendant offer the opinion of its own expert, who derived his antithetical opinion upon inadmissible testing he performed the night before his deposition. The Defendant cannot rest its attack upon the methodology of Mr. Klitsch's upon its own expert's unfounded and inadmissible opinions.

Regardless, the Defendant's criticism go to the weight of Mr. Klitsch's testimony and may be the subject of cross-examination. *Walker v. Gordon*, 46 F. App'x 691, 695–96 (3d Cir. 2002) ("An expert is, nonetheless, permitted to base his opinion on a particular version of disputed facts and the weight to be accorded to that opinion is for the jury. It is also, as the District Court observed, a proper subject for cross-examination.") *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d

802, 807 (3d Cir. 1997) ("The analysis of the conclusions themselves is for the trier of fact when the expert is subjected to cross-examination."). *Stecyk v. Bell Helicopter Textron, Inc.,* 295 F.3d 408, 414 (3d Cir.2002) ("Rule 705, together with Rule 703, places the burden of exploring the facts and assumptions underlying the testimony of an expert witness on opposing counsel during cross-examination.") *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596, 113 S. Ct. 2786, 2798, 125 L. Ed. 2d 469 (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.")

Klitsch's opinion is further informed by the expert opinions of Plaintiff's other experts, Dr. Ferrese and Michael Eskra, who separately opined that the iPad was a competent ignition source. *See generally* Exhibit C, Dr. Frank Ferrese Report, at 7; Exhibit D, Michael Eskra Report, at 11; Exhibit H, Michael Eskra Dep. Tr., at 192-193. Defendant further ignores that Mr. Klitsch did not reach this opinion in a vacuum, rather, it was the result of considering all the other evidence indicating there were no other competent ignition sources within the area of the fire's origin.

2. <u>Mr. Eskra articulated the potential mechansims which caused the "short" in the battery cell based on his substantial experience, research, and background while eliminating abuse of the product as the cause of the "short."</u>

Mr. Eskra described the various mechanisms which could cause an internal short within a battery. These include overheating, a manufacturing defect within the cell, or the degradation of cell material via byproducts caused when the battery experiences overcharge (charging higher than cell capacity) or over discharge (charging low or depleted cells). *See* Exhibit D, Michael Eskra Report, at 3-6. Battery management systems are necessary to prevent overcharge or discharge and to monitor and react to failing cells. *See* Exhibit D, Michael Eskra Report, at 5-6.

Mr. Eskra determined that the cause of the short could have been a function of the battery management system failing to prevent degradation via overcharge or over discharge or otherwise adequately monitor and react to the failing cell. In furtherance of this theory, Mr. Eskra tested two generations of iPads which had the same battery management systems as the subject iPad. *See* Exhibit D, Michael Eskra Report, at 10-11; Exhibit H, Michael Eskra Dep. Tr., at 149-150; Exhibit K at 82. The testing revealed that the battery management system allowed for the recharging of a battery cell that is at near 0 volts. *See* Exhibit D, Michael Eskra Report, at 10-11. Recharging a cell with such voltage can cause degradation over time via over discharge leading to a short. *See* Exhibit D, Michael Eskra Report, at 10-11. While the iPad itself is designed to shut off after the voltage reaches 3.1 volts in an attempt to prevent over discharge, the cell can nonetheless lose voltage if it left uncharged for an extended period of time or if normal aging has increased self-discharge. *See* Exhibit D, Michael Eskra Report, at 10-11. Thus, a defect in the battery management system cannot be ruled out.

The Defendant attacks Mr. Eskra who used, among many other things, the CT imagery of the iPad battery cells to support his conclusion that the battery cell failed from within. He described various distinct features present in the imagery which indicate the thermal runaway event. The Defendant, for its part, claims that the CT scans show that the opposite is true; the battery cells were *attacked* by fire. The Defendant's argument that Eskra's opinion is against the weight of the scientific community is based upon a single paper authored by members of another litigation consulting group. This group looked at CT scans of batteries that were attacked by fire but, notably, did not look at any CT scans of batteries that failed internally. Eskra has provided a complete description of his methodology, attaching it to his report and discussing it at his deposition, and now also submits an affidavit to cure any challenges to the admissibility of the

evidence proffered at this time.

Plaintiff has abbreviated its discussion here of the above process of analysis by Eskra. Eskra has provided an affidavit setting forth the full methodology he employs for reviewing lithium ion battery cells, as conducted and memorialized in his report. This Honorable Court would be well served to review the full description and analysis that was undertaken by Eskra, and the scientific bases for same. *See* Exhibit K, Affidavit of Mike Eskra.

Eskra's methodology speaks for itself and should be reviewed fully, but it involves reviewing and comparing battery cells located within an area of origin, and initially ruling out those that appeared, visually and/or based on x-rays and CT scans, to be damaged from the outside-in based upon certain criteria. If such indicia of external attack do not exist, then a cell is reviewed in greater detail through further CT scan analysis for specific indicia an internal short circuit. In this case, Eskra's analysis determined that only one of the cells retained from the area of origin was not a victim of fire attack, based on such factors.

As noted above, the only basis that Defendant presents to contradict the reliability of this detailed methodology is a single study/paper published this past year. Eskra directly addresses this article in his Affidavit as well as Appendix A of his report. *See* Exhibit K. First, he notes how the limited findings (that indicia of internal short can be recreated by external attack) do not actually contradict the methodology. *Id*. Simply put, just because the authors could recreate a single physical indicium similar to one demonstrating a possible internal short circuit,that does not undermine the methodology that would still not have misinterpreted such indicia - because other attributes would have demonstrated to an observer that it was not a causal internal failure. Eskra also notes a number of weaknesses in the authors' testing protocols and methods, but those are

secondary to the fact that the findings of this new study - even if valid - do not actually undermine Eskra's detailed and reliable methodology.

As mentioned in the Introduction above, Defendant misled the Court by suggesting that (a) only one scientific paper supports Eskra's methodology which, in part, employs the use of CT scans to determine whether a cell was the cause of the fire, and (b) that this paper was only recently revealed.  However, the paper was not only cited in Mr. Eskra's report but also discussed at his deposition. *See* Mike Eskra Report, ECF No. 42-7, 20. Mike Eskra Dep. Tr., ECF No. 43-9, 213:17- 217:24.  As this portion of deposition transcript points out, Mr. Eskra also referred to other scientific, peer-reviewed articles which support his opinion in addition to the one paper mentioned above.

As such, Defendant's motion must be denied.

## V.     CONCLUSION

For the reasons stated above, Plaintiff respectfully requests Defendant's Motion be denied.

 

          **de LUCA LEVINE LLC**

**BY:  /s/ Joseph L. McGlynn**
     JOSEPH L. MCGLYNN,
     PA ID No.: 201181
     Three Valley Square, Suite 220
     Blue Bell, PA  19422
     Phone:  (215) 383-0081
     Fax:  (215) 383-0082
     E-Mail: jmcglynn@delucalevine.com
     ATTORNEY FOR PLAINTIFF