IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| MICHAEL MACALUSO, | : | |
| *Plaintiff* | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| APPLE INC., | : | NO. 21-1361 |
| *Defendant* | : | |

**M E M O R A N D U M**

PRATTER, J.                                                          JULY  21 , 2023

Where there is smoke, there is fire. This case centers around a variation on the theme:

where there is a V-shaped pattern of smoke damage, what was the source of the fire?

Michael Macaluso's kitchen caught fire in March 2020. Mr. Macaluso asserts that the fire

originated with his fiancée's Apple iPad Air 2, which had been charging on a kitchen counter while

Mr. Macaluso's family were out of the house. Mr. Macaluso sued Apple, the manufacturer of the

iPad, alleging strict products liability (Count I), negligence (Count II), and breach of express and/or

implied warranties (Count III).

Mr. Macaluso has proffered three expert opinions in support of his suit, two of which are

challenged by Apple. One, from David Klitsch, presents an opinion that the fire originated in the

area where the iPad had been charging at the time of the fire and that a failure of the iPad would

result in a fire that could result in the ignition of the wooden cabinet above the counter. Another

opinion, authored by Michael Eskra, presents an opinion that the fire was caused by a shorting cell

in the iPad, either due to the age of the iPad or due to the reduction of the battery to less than 1

volt and subsequent recharging, which may have increased the probability of a thermal runaway.

Apple seeks to exclude these two opinions as untimely or for alleged shortcomings under *Daubert*

*v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

Apple presents its own expert report, in which joint authors Donald Hoffmann and Erik Swonder opine that the fire was caused when the stove was left on while unattended and while combustible materials were left on the stove. Mr. Macaluso objects to the testimony of both of Apple's experts as duplicative, argues that Apple should not be allowed to offer expert testimony regarding untimely disclosed testing, and contends that Apple's experts may not testify that the iPad can be ruled out as the cause of the fire based on its charge status and the interpretation of CT scans.

Apple simultaneously filed a motion for summary judgment with its Rule 702 motion to exclude Mr. Macaluso's experts, arguing primarily, but not exclusively, that if the Court were to grant its motion to exclude Mr. Eskra's and Mr. Klitsch's expert testimony, Mr. Macaluso would lack competent expert evidence to carry his burden as plaintiff.

The motions have been fully briefed, and the Court heard oral argument on the issues raised. For the reasons set forth below, the Court will deny in part and grant in part motion to exclude expert testimony, deny Mr. Macaluso's motion to exclude expert testimony, and grant in part and deny in part Apple's motion for summary judgment.

TABLE OF CONTENTS

BACKGROUND ............................................................................................................. 3

DISCUSSION ............................................................................................................... 5

   I.  Motions to Exclude Expert Testimony.......................................................... 5

      A. Mr. Macaluso's Motion to Preclude Apple's Experts ............................. 8

      B. Apple's Motion to Exclude Testimony of David Klitsch and Michael Eskra...................... 13

   II. Apple's Motion for Summary Judgment...................................................... 23

      A. Because Mr. Macaluso's Experts Are Not Excluded, Apple Is Not Entitled to Summary Judgment on All Claims ...................................................................... 23

      B. Mr. Macaluso Has Put Forth More Than Merely Colorable Evidence for His Claims ......... 25

      C. Mr. Macaluso May Rely on the Malfunction Theory for His Manufacturing Defect Claim 26

      D. Evidence of Reasonable Alternative Design Is Not a Prerequisite to Mr. Macaluso's Design Defect Claim.................................................................................. 29

      E. Summary Judgment Is Granted on the Breach of Implied and Express Warranties Claim... 30

CONCLUSION.............................................................................................................. 33

## BACKGROUND

Michael Macaluso bought an Apple iPad Air 2 for his fiancée in 2016. According to Apple, the iPad had a one-year limited warranty which disclaimed all other express and implied warranties, using the following language:

> TO THE EXTENT PERMITTED BY LAW, THIS WARRANTY AND THE REMEDIES SET FORTH ARE EXCLUSIVE AND IN LIEU OF ALL OTHER WARRANTIES, REMEDIES AND CONDITIONS, WHETHER ORAL, WRITTEN, STATUTORY, EXPRESS OR IMPLIED. APPLE DISCLAIMS ALL STATUTORY AND IMPLIED WARRANTIES, INCLUDING WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE AND WARRANTIES AGAINST HIDDEN OR LATENT DEFECTS, TO THE EXTENT PERMITTED BY LAW. IN SO FAR AS SUCH WARRANTIES CANNOT BE DISCLAIMED, APPLE LIMITS THE DURATION AND REMEDIES OF SUCH WARRANTIES TO THE DURATION OF THIS EXPRESS WARRANTY AND, AT APPLE'S OPTION, THE REPAIR OR REPLACEMENT SERVICES DESCRIBED BELOW.

Ex. B. to Def.'s Mot. for Summ. J. ("Warranty") at 1. According to Mr. Macaluso, this warranty was never provided to him.

On March 2, 2020, a fire broke out in Mr. Macaluso's kitchen near the stovetop, causing some moderate smoke damage to the rest of the house. There was a "V pattern" of fire damage observed around the left rear stovetop burner and the adjacent counter. The Pennsylvania State Police Fire Marshal who observed the kitchen on March 2, 2020 stated that the fire appeared to have originated on the kitchen counter, to the left of the stove.

Shortly after the fire, on March 5 and March 31, 2020, David Klitsch, a fire investigator retained by Mr. Macaluso's insurance carrier, Allstate, collected what remained of the iPad, the electric stovetop, and other items from the kitchen.[1] Allstate and Apple inspected these artifacts on June 24, 2020, and determined that the left rear burner of the stovetop was in the "on" position after the fire, at a medium-high setting. The control panel for the stovetop had "push-to-turn" knobs, so that a knob must be pushed in and then turned to set any burner to the "on" position. The other items recovered from the kitchen included burned remnants of a cardboard box of potato chips on and around the stovetop, some portion of which had melted to the stove top itself.

Mr. Macaluso disclosed three experts in this case: Mr. Klitsch, Frank Ferrese, and Michael Eskra. Mr. Klitsch, a fire investigation expert, opines that the origin area of the fire was the countertop next to, but not including, the stovetop. In reaching that conclusion, Mr. Klitsch reviewed township volunteer company and state fire marshal reports, and deposition transcripts of the local fire chief, state troopers, and Mr. Macaluso. Mr. Klitsch expressly eliminated several other sources, including the stove top, as viable ignition sources. Mr. Klitsch suggests that the knob to the stove could have been pushed into the on position by falling debris from overhead cabinets near the control panel. Mr. Klitsch reports having conducted an experiment after the initial

---

[1]    Allstate, as subrogee, is the real party in interest in this claim; however, the subrogor, Mr. Macaluso, is the named plaintiff pursuant to Pennsylvania Rule of Civil Procedure 2002(d).

report and rebuttal deadlines by holding a lighter flame to a cardboard box of snacks for one minute and 14 seconds before the box ignited.

Dr. Ferrese, an electrical engineer, opines that all of the items except for the iPad in the area to the left of the stove could be excluded as causes of the fire. Dr. Ferrese excluded the stovetop as a potential source of the fire because Mr. Klitsch opined that the stovetop was not in the fire origin area.

Mr. Eskra, a battery expert, opines that the iPad's battery shorted, causing a thermal "runaway event" that led to the fire. The only expert retained by Mr. Macaluso who opines as to defects in the iPad, Mr. Eskra stated that he has no opinions as to reasonable alternative designs of the iPad.

Apple, on the other hand, disclosed two engineering and fire investigation experts, Donald Hoffmann and Erik Swonder, who opine in a joint report that combustible materials were ignited from the stovetop, which had been turned on and left unattended. Dr. Hoffmann tested an iPad Air 2, forcing the device to undergo a battery thermal event, to demonstrate that the device did not emit flames sufficient to ignite the cardboard snack packaging. This testing was disclosed to Mr. Macaluso 20 minutes before Dr. Hoffmann's deposition.

## DISCUSSION

### I.   Motions to Exclude Expert Testimony

Federal Rule of Evidence 702, "which governs the admissibility of expert testimony, has a liberal policy of admissibility." *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997). Rule 702 provides that

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The root purpose of Rule 702's gatekeeping requirement relating to expert testimony "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. V. Carmichael*, 526 U.S. 137, 152 (1999). The Third Circuit Court of Appeals has interpreted Rule 702 as setting forth three requirements: (1) that the expert is qualified; (2) "the expert must testify about matters requiring scientific, technical or specialized knowledge"; and (3) "the expert's testimony must assist the trier of fact." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008); *accord In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741–43 (3d Cir. 1994).

Under the first requirement, "a broad range of knowledge, skills, and training qualify an expert as such." *Paoli*, 35 F.3d at 741. But courts have rejected the idea that witnesses offered as experts must meet "overly rigorous requirements of expertise" so long as they have "more generalized qualifications." *Id.*

Under the second requirement, "an expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable." *Id.* at 742. An expert's opinion may be deemed reliable if it is "based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation,'" giving the expert "good grounds" for his opinion. *Id.* (quoting *Daubert*, 509 U.S. at 590). District courts have "broad discretion in determining the admissibility of evidence, and 'considerable leeway' in determining the reliability of particular expert testimony under *Daubert*." *Walker v. Gordon*, 46 F. App'x 691, 694 (3d Cir. 2002). The

test of reliability is expected to be applied with "flexibility," and district courts should consider

several factors in evaluating whether an expert's methodology is reliable, including:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

*Pineda*, 520 F.3d at 247–48; *see also Kumho*, 526 U.S. at 141 ("[T]he test of reliability is 'flexible,'

and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in

every case."). "While no one [factor] is dispositive, some analysis of these factors is necessary."

*UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 834 (3d Cir. 2020).

"The proponent of the expert testimony bears the burden to show by a preponderance of the

evidence that their expert's opinion is reliable." *Whyte v. Stanley Black & Decker, Inc.*, 514 F.

Supp. 3d 684, 691 (W.D. Pa. 2021) (citing *Oddi v. Ford Motor Co.*, 234 F.3d 136, 144 (3d Cir.

2000)).

 In assessing the third requirement—whether the expert's testimony will assist the trier of

fact—the Court must determine the "fit" of the expert's testimony as it relates to the case at hand,

meaning the Court considers "the proffered connection between the scientific research or test result

to be presented, and particular disputed factual issues in the case." *United States v. Downing*, 753

F.2d 1224, 1237 (3d Cir. 1985); *see also Lontex Corp. v. Nike, Inc.*, No. 18-cv-5623, 2021 WL

1145904, at *4 (E.D. Pa. Mar. 25, 2021) ("An expert's testimony fits the case if the testimony will

'assist the trier of fact.'") (quoting *Paoli*, 35 F.3d at 743). "[T]he requirement of reliability, or

'good grounds,' extends to each step in an expert's analysis all the way through the step that

connects the work of the expert to the particular case." *Paoli*, 35 F.3d at 743.

In addition to considering "fit," the Court must determine whether the expert's testimony is misleading. While Federal Rule of Evidence 403 ostensibly gives the Court more power over the admissibility of expert testimony than lay witnesses, the Third Circuit Court of Appeals has held that "for a district court to exclude scientific evidence, there must be something *particularly* confusing about the scientific evidence at issue—something other than the general complexity of scientific evidence." *Id.* at 747. Thus, it seems that as a legal matter, the expert's testimony will "assist" the trier of fact so long as it is not "particularly confusing." *See id.*

### A. **Mr. Macaluso's Motion to Preclude Apple's Experts**

#### 1. **Apple's Expert Testimony Will Not Be Excluded as Duplicative**

Under Federal Rule of Evidence 702, expert testimony must "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Under Rule 403, however, a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . needlessly presenting cumulative evidence." Fed. R. Evid. 403. It follows that duplicative expert testimony may be excluded. *See, e.g., Hartle v. FirstEnergy Generation Corp.,* 7 F. Supp. 3d 510, 525 (W.D. Pa. 2014) ("Because [the expert witness's] opinions are unnecessarily cumulative and would not help the trier of fact, defendant's motions to preclude his expert testimony will be granted.").

Mr. Macaluso essentially argues that there are too many cooks in Apple's kitchen. He contends that because Apple's experts Dr. Hoffmann and Mr. Swonder testified during their depositions that they would each be prepared to offer all opinions contained in their joint report at the time of the trial, it would be "unnecessarily cumulative" and duplicative to allow both experts to testify at trial. Moreover, he argues that Apple's failure to delineate between Dr. Hoffmann's and Mr. Swonder's testimony violates Federal Rule of Civil Procedure 26—which provides that

expert witness reports must contain "a complete statement of all opinions the witness will express and the basis and reasons for them"—and thus impedes Mr. Macaluso's ability to prepare for trial. Fed. R. Civ. P. 26(a)(2)(B)(i).

However, Apple conveyed to Mr. Macaluso before and during the depositions of both experts that it has no intention of calling both Dr. Hoffmann and Mr. Swonder to offer the same testimony at trial, but rather that Dr. Hoffmann will testify as an expert witness pursuant to Federal Rule of Evidence 702 while Mr. Swonder may only provide factual testimony about the joint inspections. Thus, according to Apple, there will be no overlap between the trial testimony of its two experts.

Because "it is each party's prerogative to decide the most suitable division of labor between its experts," *Diawara v. United States*, No. 18-cv-3520, 2020 WL 6262983, at *2 (E.D. Pa. Oct. 23, 2020), and the deposition record shows an intent on Apple's part that the testimony of Dr. Hoffmann and Mr. Swonder will not overlap, the Court will not preclude either of the experts from testifying at this time. To the extent that the testimony of Dr. Hoffmann and Mr. Swonder may become cumulative during the course of trial, Mr. Macaluso is not foreclosed from raising an appropriate objection at that time.

### 2. Apple Will Not Be Precluded from Offering Expert Testimony Regarding Late Disclosed Testing

Under Federal Rule of Civil Procedure 26, expert witness reports must contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). When a party fails to provide information required under Rule 26(a), that information is generally not permitted to be used in a motion or at trial, unless the failure to provide the information "was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Court

considers four factors in determining whether it would be appropriate to exclude evidence for failure to comply with Rule 26:

> (1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or wilfulness in failing to comply with a court order or discovery obligation.

*Nicholas v. Pa. State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000). But exclusion of an expert report on grounds of untimeliness alone is disfavored—indeed, such a sanction "is generally unwarranted if the prejudice to the opposing party is slight and curable—particularly in the absence of a firm, impending trial date." *Brown v. Robert Packer Hosp.*, 341 F.R.D. 570, 574 (M.D. Pa. 2022); *see also Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997) ("[T]he exclusion of critical evidence is an extreme sanction, not normally to be imposed absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence.") (internal quotation marks omitted).

The Court's scheduling order imposed a disclosure deadline for affirmative expert reports on February 14, 2022 and for rebuttal reports on February 28, 2022. Mr. Macaluso argues that Dr. Hoffmann's testing, involving forcing the failure of a lithium-ion battery to see if combustibles in proximity to the encased battery would ignite, on April 7, 2022—the night before his deposition—should be excluded because the disclosure clearly occurred after the deadlines for expert reports. According to Mr. Macaluso, the late disclosure is prejudicial to him because his counsel had no opportunity to review the testing procedures or data to question Dr. Hoffmann about the testing. He also contends that Apple was on notice that Mr. Macaluso would argue that the iPad caused the fire as stated in the Amended Complaint, and that, if Apple could rely on this testing, it would

incur further expert expenses to analyze the testing, re-depose Dr. Hoffmann, and postpone the trial schedule.

Apple retorts that Dr. Hoffmann only performed the belated testing because Mr. Macaluso's own expert, Mr. Klitsch, testified at his deposition that he had performed post-disclosure experimentation. It also avers that Mr. Macaluso could reasonably have anticipated that Dr. Hoffmann would have performed responsive testing and been prepared to explore the details of Mr. Hoffmann's testing as Apple's counsel did with Mr. Klitsch under similar circumstances. Apple questions any impact on the orderly and efficient trial of the case, which was not set for any date certain as of the filing of the Rule 702 motions. Finally, Apple argues there was no bad faith, where Dr. Hoffmann conducted his responsive simulation within days after learning of Mr. Klitsch's opinion that the iPad emitted a fireball that could ignite a cardboard box of snacks on the stovetop.

The Court finds that the nondisclosure of Dr. Hoffmann's testing until just before his deposition was only at the eleventh hour but was not so incurable as to warrant preclusion, particularly because at the time of Dr. Hoffmann's deposition, there was no set trial date. *See Brown*, 341 F.R.D. at 574; *see also White v. Beaver Cnty.*, No. 17-cv-998, 2019 WL 5395212, at *2–*3 (W.D. Pa. Oct. 22, 2019) (finding that the striking of an allegedly late expert report was unwarranted, even if a deadline applied to expert witness material, because there was no incurable prejudice when plaintiff was on notice of defendants' responses to expert discovery). The parties have not provided any information as to whether at the time of the disclosure, Mr. Macaluso's counsel asked for or insisted on a delay in starting or completing the Apple expert's deposition.

The Court therefore declines to exclude Dr. Hoffmann's late-disclosed testing.

### 3. Apple's Experts Will Not Be Precluded from Testifying that the iPad Can Be Ruled Out as the Cause of the Fire Based on Its Charge Status and the Experts' Interpretations of CT Scans

Mr. Macaluso contends that Dr. Hoffman's and Mr. Swonder's initial and supplemental reports did not discuss how the particular iPad could not have caused the fire due to the iPad's charge status, nor did the reports discuss how Dr. Hoffman and Mr. Swonder came to the conclusion that the iPad did not cause the fire from the CT scans of the batteries showing no sign of internal failure. Nevertheless, according to Mr. Macaluso, both Dr. Hoffman and Mr. Swonder testified at their depositions that they opined that the iPad did not start the fire based on its charge status and a review of the CT scans. Therefore, Mr. Macaluso first avers that these opinions should be precluded because the experts could not articulate a basis for why or how the CT scans and charge status informed their opinions, making such opinions unreliable under Federal Rule of Evidence 702. Second, under Federal Rule of Civil Procedure 37(c)(1), Apple should be precluded from offering late disclosed opinions because they prejudice Mr. Macaluso.

Apple, on the other hand, argues that its joint expert report states "[t]here is no evidence of a failure and/or damage consistent with a failure of the batteries inside the iPad," Pl.'s Ex. A. to Mot. to Preclude Def.'s Experts ("Hoffman & Swonder Report") at 22, and that the factual basis for Dr. Hoffman's and Mr. Swonder's state of charge opinion appears in the report when it mentions that Mr. Macaluso's fiancée "plugged in a dead iPad next to the range at 8 AM." *Id.* at 19. Moreover, Apple's supplemental report states that "[b]ased on [the experts'] evaluation of [Mr. Eskra's] images and of the CT scans, there is no indication of any fault or failure within [Mr. Eskra's] identified area of interest. This damage appears to be uniform throughout the battery and is consistent with the damage observed in lithium ion batteries that have been attacked by fire." Pl.'s Ex. B. to Mot. to Preclude Def.'s Experts ("Hoffman & Swonder Supp. Report") at 17. In his

deposition, Dr. Hoffmann gave testimony about the CT scans performed and the lack of charge in the iPad.

Mr. Macaluso again fails to show that exclusion of Dr. Hoffman's and Mr. Swonder's opinions relating to the state of charge of the iPad and their interpretations of the CT scans is an "appropriate sanction" under these circumstances. *Nicholas*, 227 F.3d at 148. The Court does not credit Mr. Macaluso's allegations of "prejudice or surprise" where Dr. Hoffman and Mr. Swonder's report provided at least some indication that the charge status of the subject iPad and the interpretation of CT scans factored into their ultimate opinion, and Mr. Macaluso had an opportunity to make further inquiries about those conclusions during Dr. Hoffman's deposition. *Id.* Mr. Macaluso also fails to show how the resulting prejudice, if any, was incurable, or how the "orderly and efficient trial of the case" was jeopardized by shortcomings in Apple's expert reports if the Court had not yet set a trial date certain for this litigation when the relevant expert report and deposition deadlines occurred. *Id.*

Absent some showing of incurable prejudice to Mr. Macaluso or "willful deception or flagrant disregard of a court order" on Apple's part, *Konstantopoulos*, 112 F.3d at 719, Apple's experts will not be precluded from testifying that the iPad can be ruled out as the cause of the fire based on its charge status and interpretations of CT Scans.

### B. **Apple's Motion to Exclude Testimony of David Klitsch and Michael Eskra**

#### 1. **Mr. Klitsch's Opinions Will Not Be Excluded as Untimely**

Stealing a page from Mr. Macaluso's book, Apple first argues that late-disclosed opinions of Mr. Macaluso's expert Mr. Klitsch must be excluded as untimely. As described above, Federal Rule of Civil Procedure 37(c) governs the exclusion of evidence for failure to comply with Federal Rule of Civil Procedure 26. And again, the Court considers the prejudice or surprise to the parties,

the ability to cure such prejudice, impediments to the efficient trial of the litigation, and bad faith or willfulness in determining whether evidence at issue ought to be excluded. *Konstantopoulos*, 112 F.3d at 719.

Mr. Klitsch's expert report was served on February 14, 2022, consistent with the Court's scheduling order. In that report, Mr. Klitsch had assumed that the countertop adjacent to Mr. Macaluso's kitchen stove was clear of debris or combustible material, and so his opinion necessarily concluded that the battery thermal event involving an iPad Air 2 would generate enough heat and flame that it would ignite the cabinets above the countertop. After reviewing Apple's expert reports purporting to demonstrate the impossibility of a battery thermal event in an iPad Air 2, Apple argues that Mr. Klitsch changed his opinion to assume that there was a nearby significant fuel source, specifically, a cardboard box of chips. According to Apple, this means that Mr. Klitsch has espoused an entirely new theory, which would result in different fire patterns, different fire dynamics, and an overall different timeline, and Mr. Klitsch only disclosed this theory at his deposition, 38 days after the deadline for expert disclosures had passed.

Mr. Macaluso argues that any change in Mr. Klitsch's assessment of the first material ignited is harmless. Consistent with fire investigation procedure, when presented with additional data after producing his own report from Apple's experts, Mr. Klitsch simply identified an additional load of fuel within the area of fire origin (*i.e.*, the box of chips), which did not change his final hypothesis or materially alter any aspect of his opinion.

Ultimately, sauce for the goose is sauce for the gander. Apple, like Mr. Macaluso, fails to adequately explain how it would be prejudiced because of the revision in Mr. Klitsch's opinion, particularly where no trial date certain was fast approaching in this case. *Cf. Palmer v. Black & Decker (U.S.) Inc.*, No. 20-cv-1084, 2022 WL 1721206, at *3–*4 (M.D. Pa. May 27, 2022)

14

(finding that plaintiff had not explained prejudice even where "the case was in the stage of mediation and/or trial" and "[p]laintiff [claims that he] does not have the time or opportunity, so close to trial to have his experts prepare appropriate rebuttal reports").

The Court therefore declines to exclude Mr. Klitsch's opinion on the basis that it is untimely.

### 2. Mr. Klitsch's Opinions Generally Survive the Rule 702 Analysis

#### i. *Reliability*

Apple next asserts that Mr. Klitsch's opinion should be excluded at trial on the basis that his methods and procedures are not reliable as required by Rule 702 and *Daubert*.[2] The reliability inquiry requires evaluating if "the expert's testimony is supported by good grounds." *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 81 (3d Cir. 2017) (internal quotation marks omitted). The standard in assessing reliability "is not that high . . . even given the evidentiary gauntlet facing the proponent of expert testimony under Rule 702." *In re TMI Litig.*, 193 F.3d 613, 665 (3d Cir. 1999). The Court's focus in assessing reliability "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595.

Here, the parties do not contest that the National Fire Protection Association ("NFPA") 921 is the generally accepted peer-reviewed and comprehensive guide to procedures and techniques for fire investigations in the United States. *See, e.g., Stiffler v. Apple Inc.*, No. 21-cv-523, 2023 WL 1996692, at *3 (W.D. Pa. Feb. 13, 2023) (providing that the NFPA standards are considered "the so-called 'gold standard' in the industry"). NFPA 921 does not require physical testing. *See Allstate Ins. Co. v. LG Elecs. USA, Inc.*, No. 19-cv-3529, 2021 WL 2875603, at *4 (E.D. Pa. July 8, 2021). NFPA 921 states that "[t]esting of the hypothesis is done by the principle

---

[2]    Mr. Klitsch's qualifications are not challenged by Apple.

of deductive reasoning, in which the investigator compares the hypothesis to all known facts as well as the body of scientific knowledge associated with the phenomena relevant to the specific incident." *Smith v. Spectrum Brands, Inc.*, No. 21-cv-4983, 2022 WL 3229330, at *4 (E.D. Pa. Aug. 10, 2022).

Apple alleges that Mr. Klitsch failed to follow the NFPA 921 methodology because he interpreted the V pattern of smoke to exclude the stovetop burner as an area of origin for the fire only because Mr. Macaluso told him that the stove was turned off when he left home prior to the fire. Apple also contends that Mr. Klitsch's opinion that the iPad was a competent ignition source was contrary to the evidence because he had not conducted any tests to determine whether an iPad Air 2 could be a competent ignition source for combustible material in the kitchen, nor did Mr. Klitsch review any tests, experiments, or studies that would support such a notion. Apple also takes umbrage that Mr. Klitsch theorizes that the contents of a cabinet fell across the control panel of the stove during the fire, knocking the control for the left rear burner to an "on" position, a theory on which Mr. Klitsch also did not conduct any testing.

Over the past two years, Mr. Klitsch has examined the fire scene at Mr. Macaluso's home, conducted witness interviews, reviewed deposition testimony transcripts, reviewed fire investigation reports prepared by the Dingman Township Volunteer Fire Company and Pennsylvania State Police Fire Marshal, reviewed the stove manual for the model of stove at issue in this case, performed evidence examinations in a laboratory, reviewed the results of examinations performed by others, reviewed written discovery responses and other disclosed documents, and studied peer-reviewed texts. Mr. Klitsch avers in his report that he did initially consider the stove as a potential source of the fire, but ruled it out after considering (1) that the burn pattern showed that the fire started to the left of the stove, (2) Mr. Macaluso's testimony that he and his fiancée

did not use the burner the morning of the fire, and (3) the fact that there were identical fire patterns on the front and rear of the left-side control panel of the stove. As to the "on" position of the burner, Mr. Klitsch observed that another control knob on the oven had been knocked off by the falling debris of the cabinets and microwave above the stove at some point during the fire.

Mr. Klitsch has generally followed the method outlined by NFPA 921 and performed cognitive, if not significant physical testing, on his hypotheses, ruling out alternative causes of the fire, including the nearby coffee pot, the microwave, and the stove. *See Stiffler*, 2023 WL 1996692, at *3 ("[T]he National Fire Protection Association's standards require that the process must include *credible* elimination of all other potential ignition sources.") (internal quotation marks omitted); *see also Allstate Ins. Co. v. Anderson*, No. 15-cv-2651, 2016 WL 2939506, at *4 (E.D. Pa. May 20, 2016) ("Although [Mr.] Klitsch failed to perform physical tests of his proposed ignition scenario, his process of elimination and his reliance on [the defendant's] admission [of conduct] before the fire are sufficient to support his conclusion."). Because he lists in his report a series of hypotheses in sufficient detail such that they could be tested by another investigator, Mr. Klitsch has used a scientific method in making his opinions. *See Stiffler*, 2023 WL 1996692, at *3.

It falls to the jury to determine whether Mr. Klitsch's elimination of alternate sources is, in fact, credible. *Id.* "The fact that [Apple] dispute[s] [Mr. Klitsch's] conclusions regarding the source of the fire . . . does not alter this conclusion." *Smith*, 2022 WL 3229330, at *6. Mr. Klitsch's analysis does not have to be correct or without flaw to be admitted. *Paoli*, 35 F.3d at 744. The Court instead must consider whether Mr. Klitsch's "testimony is supported by good grounds," a standard which, it bears repeating, is "not that high." *Karlo*, 849 F.3d at 81 (internal quotation marks omitted). Mr. Klitsch's report generally meets this standard.

Mr. Klitsch's expert testimony will be helpful to the jury in determining facts pertinent to this case, so his opinion will generally not be excluded. Apple will, of course, be free to vigorously cross-examine Mr. Klitsch at trial and attack his methodology and conclusions. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

### ii. Fit

Apple also challenges the fit of Mr. Klitsch's opinions with the facts of the present litigation. "Fit requires that the testimony be relevant to the issues of the case so as to assist the trier of fact." *Smith*, 2022 WL 3229330, at *3. Whether an expert's testimony fits the dispute is not an exacting standard but "is higher than bare relevance." *United States v. Schiff*, 602 F.3d 152, 173 (3d Cir. 2010) (quoting *Paoli*, 35 F.3d at 745).

Apple argues that the fit of Mr. Klitsch's late-disclosed experiment—in which he held an open flame to a cardboard snack box for one minute and fourteen seconds to ignite the package— to the facts of this case does not meet the Rule 702 standard. At his deposition, Mr. Klitsch admitted that he did not know if the subject iPad would emit flames for over a minute in the event of a battery thermal event, that he was not aware of the location of the subject iPad in relation to the box, the remnants of which were found in Mr. Macaluso's kitchen, or the ignition point of the box.

The Court agrees that this apparently haphazard experimentation falls short of the "higher than bare relevance" standard, unexacting though it may be. *Schiff*, 602 F.3d at 173. The Court

therefore agrees that Mr. Klitsch may not offer his expert opinion at trial as to this experiment because it lacks the requisite fit to the facts of this case.[3]

### 3.  The Court Will Not Exclude Mr. Eskra's Expert Opinion

Apple argues that Mr. Eskra, Mr. Macaluso's expert in lithium-ion batteries, fails on all three standards under Rule 702. The Court considers each requirement in turn.

#### i.  *Qualifications*

Qualified experts need specialized expertise. *Smith*, 2022 WL 3229330, at *3. Such expertise can be "practical" as well as "academic." *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000). The Third Circuit Court of Appeals has emphasized that this first requirement of Rule 702 should be interpreted "liberally" and permits "generalized qualifications" rather than "overly rigorous requirements of expertise." *Paoli,* 35 F.3d at 741. First and foremost, Apple contends that Mr. Eskra confirmed himself that he is not an expert on battery management systems, although he believes the battery management system is where the subject iPad's defect lies. Thus, Apple argues that Mr. Eskra lacks the requisite qualifications to testify in this case.

According to Mr. Macaluso, although Mr. Eskra does not hold himself out as an expert in designing battery management systems specifically, he does have over 30 years' experience working in the battery industry, where he has designed and developed manufacturing processes for lithium ion and other types of batteries. Mr. Eskra has a bachelor of science degree in chemical process engineering and has completed credits toward a master's degree in engineering management. He holds five patents relating to batteries and manufacturing and has reportedly authored hundreds of papers on topics involving batteries. Mr. Eskra has participated in dozens of depositions and trials and has previously been found to be a qualified expert in federal court. *See*

---

[3]     Mr. Macaluso notes in his responsive briefing that he does not intend to introduce at trial the videotaped experimental testing, which was not referenced in Mr. Klitsch's supplemental or rebuttal report.

*Auto-Owners Ins. Co. v. Makita USA, Inc.*, No. 20-cv-220, 2021 WL 6196975, at *3 (W.D. Wis. Dec. 30, 2021).

This is a sufficient basis for Mr. Eskra's qualification as a lithium-ion battery expert. *See Elcock*, 233 F.3d at 741 ("[A]t a minimum, a proffered expert witness . . . must possess skill or knowledge greater than the average layman . . . ."). Indeed, it would be an abuse of the Court's discretion to exclude Mr. Eskra's testimony merely because it "does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate." *Holbrook v. Lykes Bros. S.S. Co., Inc.*, 80 F.3d 777, 782 (3d Cir. 1996); *see also Power v. Hewlett-Packard Co.*, No. 17-cv-154, 2023 WL 2705237, at *6 (W.D. Pa. Mar. 30, 2023) (finding expert trained in electrical engineering rather than design or manufacture of battery packs and cells could still be helpful to a layperson in determining how a battery explosion and fire occurred). If Apple seeks to highlight any gaps in Mr. Eskra's qualifications as they relate to the subcategory of battery management systems, it is free to do so on cross-examination at trial. *See id.* at *7 ("To the extent that Defendant believes that [an expert's] qualifications leave something to be desired, that is an issue that can be raised during his cross-examination.").

### ii.  *Reliability*

Apple alleges that Mr. Eskra's methods are unreliable because he reviewed a CT scan months before examining other artifacts from the Macaluso house fire, contrary to NFPA 921, § 4.1. This, Apple avers, produces confirmation bias. Apple also questions the reliability of Mr. Eskra's testimony because he allegedly conceded that the only published article regarding post-fire imaging to identify a pre-fire internal fault establishes that engineers cannot distinguish pre-fire from post-fire damage. Tal Nagourney *et al.*, *The Implications of Post-Fire Physical Features of*

*Cylindrical 18650 Lithium-Ion Battery Cells*, Fire Technology, Jan. 2021. In fact, Apple argues that Mr. Eskra has admitted that there is not a single published article, study or test that supports his method of reviewing damage patterns in electrode windings to determine whether fire damage was internal or external. Plus, Mr. Eskra cannot describe how the iPad's battery cell was defective by permitting battery cells to be recharged from low states of charge, nor can he pinpoint when the internal short developed, the general usage or behavior of the iPad's battery before the fire, or how often the iPad was used each day.

Mr. Eskra's opinion is sufficiently reliable to survive Apple's motion to exclude. In order to be reliable, an expert opinion must be based on the "methods and procedures of science," not "subjective belief or unsupported speculation." *Paoli*, 35 F.3d at 742. Mr. Eskra reviewed deposition transcripts, township volunteer fire department reports, and CT scans of the subject iPad and attended a laboratory examination of the iPad, stove, and kitchen countertop. In analyzing the CT scans, Mr. Eskra observed in his report that one of the iPad batteries was "missing mass and [wa]s rather rounded off rather than coming to a 90° corner," that the cell "ha[d] consistent electrode windings that appear continuous up until the right edge of the cell where the electrode is fragmented," and electrodes showing "expanding gases and heat" that Mr. Eskra found indicative of internal heating rather than attack by fire. Ex. D to Pl.'s Resp. in Opp. to the Mot. To Exclude Test. of David Klitsch and Michael Eskra ("Eskra Report") at 8–11. Mr. Eskra has also cited a 2007 research paper presented at the Institute of Electrical Electronics Engineers, which endorses the use of CT scans to determine a point of fault within an initiating battery cell, in contrast to the article that Apple cites as a condemnation of Mr. Eskra's methodology.

With this background, the Court cannot fairly conclude that Mr. Eskra's report is a mere recounting of unsupported beliefs or speculation and thus determines that Mr. Eskra's opinions are

sufficiently reliable to proceed to trial. While Apple may, on cross-examination, draw out how Mr. Eskra's opinion could have been more rigorous in its methodology, the Court declines to assume that mantle in place of Apple at this stage of the litigation. *See Power*, 2023 WL 2705237, at *8 ("The function of the Court at this point is as a gatekeeper, ensuring that testimony that does not reach the reliability threshold set by *Daubert* is not presented at trial.").

### iii. Fit

Apple also challenges the fit of Mr. Eskra's expert testimony because Mr. Eskra performed testing on a 2011 iPad 2 model and a 2019 iPad 7 model, where the subject device was a 2016 iPad Air 2 device. The "fit" requirement of Rule 702 "goes primarily to relevance." *Daubert*, 509 U.S. at 591. Although for this requirement too, "the standard is not that high[,] . . . [n]onetheless, the standard is higher than bare relevance." *Paoli*, 35 F.3d at 745.

There is a sufficient—albeit not perfect—fit here. In addition to examining the subject iPad, Mr. Eskra tested exemplar iPads, produced five years prior to, and two years after, the subject iPad, respectively, that Mr. Eskra believed would have had battery management systems similar to that of the subject iPad. Mr. Eskra states in his report that these battery management systems did not prevent the devices from being recharged notwithstanding a weakened cell. According to Mr. Eskra, recharging of a severely depleted cell could, potentially, lead to thermal runaway caused by internal shorting. The Court is not aware of any authority that would require Mr. Eskra to use *only* 2016 iPad Air 2 devices as exemplars in making his observations. *Cf. Power*, 2023 WL 2705237, at *9 (finding insufficient fit, and excluding expert testimony, where battery technology for *laptop computers* was compared to battery technology for *inkjet printers*).

Because Mr. Eskra's observations of the battery management systems of the 2011 iPad 2 model and the 2019 iPad 7 models meet a standard that is higher than "bare relevance" to the

question of whether a similar battery management system could have resulted in a thermal event in the subject iPad, *Paoli*, 35 F.3d at 745, the Court concludes that Mr. Eskra may offer an opinion as to his observations of the iPad exemplars.

Having considered each of the Rule 702 standards, the Court declines to exclude Mr. Eskra's expert opinion at trial.

## II. Apple's Motion for Summary Judgment

A court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." *Id.* The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. More than the "mere existence of a scintilla of evidence in support of the [non-moving party's] position" is required. *Anderson*, 477 U.S. at 252. Where the Court determines that there are no genuine issues of material fact, it should grant summary judgment. *Celotex*, 477 U.S. at 322.

### A. Because Mr. Macaluso's Experts Are Not Excluded, Apple Is Not Entitled to Summary Judgment on All Claims

Apple argues first in its summary judgment motion that because Mr. Macaluso's case is dependent on Mr. Klitsch and Mr. Eskra to exclude the stove burner as the cause of the fire and to

prove a defect in the iPad, respectively, if either expert is excluded, Apple would be entitled to summary judgment on all claims.

Under Pennsylvania law, "[i]f there are other independent causes present from which [a] fire might have originated, the plaintiff must show defendant's acts or omission produced the injury; the other possible causes must be eliminated." *Propert v. Flanagan*, 120 A. 783, 783 (Pa. 1923). Therefore, if a plaintiff fails to rule out all reasonable alternative causes, the plaintiff fails as a matter of law to prove causation. *State Farm Fire & Cas. Co. v. Steffen*, 948 F. Supp. 2d 434, 443 (E.D. Pa. 2013).  So, Apple posits, without Mr. Klitsch's opinion that the area of origin does not include the left stove burner, Mr. Macaluso cannot exclude the stove as an alternate source of the fire, entitling Apple to summary judgment. *See id.* at 446. Moreover, "[i]n order for [Mr. Macaluso] to prevail on [his] strict liability, negligence, and breach of . . . warranty claims, it is [his] burden to demonstrate that the [iPad] was defective," *Chandler v. L'Oreal USA, Inc.*, 340 F. Supp. 3d 551, 561 (W.D. Pa. 2018), so absent Mr. Eskra's expert opinion of a defect in the subject iPad's battery, Mr. Macaluso's case would also crumble.

But, as discussed above, the Court has determined that the expert opinions of both Messrs. Klitsch and Eskra are admissible, foreclosing Apple's primary summary judgment argument. The Court declines to grant summary judgment here where the expert opinions present entirely different theories as to what caused the fire in Mr. Macaluso's kitchen, a fact that is indubitably material because it will "affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248. Because the Court concludes that "a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of" Mr. Macaluso as the non-moving party, the dispute is also genuine. *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007). Given the summary

judgment standard and the inevitable conclusion that genuine disputes of material fact remain, the Court will not grant Apple's motion for summary judgment as to all claims on this basis.

## B. **Mr. Macaluso Has Put Forth More Than Merely Colorable Evidence for His Claims**

Apple contends that, even if the Court declines to preclude Mr. Klitsch and Mr. Eskra from testifying, their opinions are not sufficient for a reasonable jury to find that anything other than the stove burner caused the Macaluso fire. "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249–50.

Apple suggests that the "V pattern" of smoke damage plainly indicates that the stove burner in Mr. Macaluso's kitchen was within the fire origin area and notes that there is undisputed evidence that the left rear burner of the stove was in the "on" position while a cardboard box was resting on top of the stove. Plus, Apple argues, no rational person could credit Mr. Klitsch's opinion that falling debris might cause the push-to-turn knob on a stove to be activated.

But "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* at 255. Mr. Macaluso has offered sufficient evidence that potentially could persuade a rational jury that his claims have merit. For example, Mr. Klitsch has noted more thermal damage to the area left of Mr. Macaluso's stovetop, not immediately above the left burner, suggesting that the stove burner was not the cause of the fire. Mr. Klitsch also hypothesized as to how falling debris from the kitchen cabinets could have resulted in the stove control being switched to "on" after the fire had already started. And Mr. Macaluso and his fiancée testified that no one had used the burner that day, and no pots or pans were found on the stovetop the day of the fire, supporting their testimony that the burner in question had not been used.

Of course, Apple's experts arrive at a different conclusion than Mr. Macaluso's experts from this evidence. But Apple is not entitled to summary judgment merely because it finds its own experts to be more credible than Mr. Macaluso's. The Court finds that Mr. Macaluso has submitted more than merely colorable, or insufficiently probative, evidence, so the Court denies summary judgment on this basis.

### C. Mr. Macaluso May Rely on the Malfunction Theory for His Manufacturing Defect Claim

Apple additionally avers that because Mr. Macaluso has no evidence of any specific manufacturing defect in the subject iPad, Apple is entitled to summary judgment on Mr. Macaluso's manufacturing defect claims. The Court cannot subscribe to that argument.

In asserting a products liability claim, "a plaintiff must demonstrate . . . that the product was defective, that the defect caused the plaintiff's injury, and the defect existed at the time the product left the manufacturer's control." *Barnish v. KWI Bldg. Co.*, 980 A.2d 535, 541 (Pa. 2009). In some product liability cases, "the plaintiff may be able to prove that the product suffered from a specific defect by producing expert testimony to explain to the jury precisely how the product was defective and how the defect must have arisen from the manufacturer or seller." *Dansak v. Cameron Coca-Cola Bottling Co.*, 703 A.2d 489, 496 (Pa. Super. Ct. 1997). But such evidence is "not essential." *Id.* Instead, "a plaintiff pursuing a case under the malfunction theory can assert a successful strict product liability claim based purely on circumstantial evidence in cases where the allegedly defective product has been destroyed or is otherwise unavailable." *Barnish*, 980 A.2d at 539. Such circumstantial evidence may include:

> (1) the malfunction of the product; (2) expert testimony as to a variety of possible causes; (3) the timing of the malfunction in relation to when the plaintiff first obtained the product; (4) similar accidents involving the same product; (5) elimination of other possible causes of the accident; and (6) proof tending to establish that the accident does not occur absent a manufacturing defect.

*Dansak*, 703 A.2d at 496. "Summary judgment is not warranted simply because the defendant hypothesizes (or even presents evidence of) reasonable secondary causes." *Id.* at 497.

Apple contends that the malfunction theory cannot be invoked by Mr. Macaluso because the iPad was available for inspection. As is apparent from the record evidence, the subject iPad was significantly damaged in the kitchen fire; however, Mr. Eskra was still able to scan and physically inspect it for his report. But the availability of a seriously damaged device to be examined does not foreclose reliance on a malfunction theory. *See, e.g., LG Elecs.*, 2021 WL 2875603, at *4 ("While the refrigerator in this case might not be destroyed or unavailable, the evidence in the record demonstrates that it was seriously damaged to the extent that an expert could not determine exactly what had happened to it. This is the exact situation in which malfunction theory applies."); *Pa. Nat'l Mut. Cas. Ins. Co. v. Sam's E., Inc.*, 251 A.3d 1250 (Table), 2021 WL 1054384, at *4 (Pa. Super. Ct. 2021) (noting that caselaw "does not stand for the proposition that plaintiffs who have the benefit of examining their allegedly defective product cannot avail themselves of the 'product malfunction' theory"). The Court will permit Mr. Macaluso to proceed under the malfunction theory.

Here, Mr. Macaluso submits evidence, via Mr. Eskra's expert report, that the subject iPad's battery suffered a short causing a thermal runaway event, which in turn led to the kitchen fire. Mr. Eskra's expert report lists as possible causes of the thermal runaway event overheating, a manufacturing defect within the cell, or degradation of the cell due to overcharge or over discharge. Mr. Eskra's report also rules out that the battery of the Macaluso iPad was not subjected to abnormal abuse by its users. And, despite Apple's protestations, the Court has not excluded Mr. Macaluso's offered expert testimony that would eliminate the stovetop as a potential source of the kitchen fire.

Apple also argues that Mr. Macaluso has put forth no evidence of a defect when the product left the manufacturer. However, as discussed above, Mr. Macaluso has submitted some circumstantial evidence from which a jury could infer a defect—namely, Mr. Eskra's expert testimony suggesting that the battery failed internally and started the fire, Mr. Klitsch's elimination of alternative causes of the fire, and the fact that the subject iPad had been in use for only about 3.5 years before it allegedly malfunctioned.

Apple protests that the iPad's daily use by Mr. Macaluso's children for three years without issue precludes Mr. Macaluso's claim. Not so. The Supreme Court of Pennsylvania has "refuse[d] to conclude that the prior successful use of a product, in and of itself, dooms a plaintiff's ability to present a *prima facie* case for strict product liability under the malfunction theory." *Barnish*, 980 A.2d at 546. Although the subject iPad was purchased over three years before the fire took place, Mr. Macaluso argues that the device failed well before its expected lifespan, possibly due to overcharge and over-discharge events altering the chemistry of the lithium ion batteries, plus the allegedly defective battery was encased in the iPad and thus allegedly undisturbed from the time it left Apple's control. *See id.* ("As but one example, should a product that has a lifespan of twenty years fail after three years of successful use because of shoddy parts, a plaintiff may still be able to prove that the product was defective when it left the manufacturer's control, despite the three years of successful use.").

So, the Court finds that Mr. Macaluso has put forward sufficient circumstantial evidence to support a jury's finding of a manufacturing defect. *See Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 335 (Pa. 2014) ("Whether a product is in a defective condition is a question of fact ordinarily submitted for determination to the finder of fact; the question is removed from the jury's consideration only where it is clear that reasonable minds could not differ on the issue."); *cf. Mains*

*v. Sherwin-Williams Co.*, No. 20-cv-112, 2022 WL 16857007, at *8 n.14 (E.D. Pa. Nov. 10, 2022) (finding that plaintiffs could not rely on malfunction theory where they failed to offer *any* expert testimony as to the variety of possible causes or to eliminate other possible causes of the accident beyond speculation). Therefore, summary judgment will not be granted on Mr. Macaluso's manufacturing defect claim.

### D. Evidence of Reasonable Alternative Design Is Not a Prerequisite to Mr. Macaluso's Design Defect Claim

Apple also briefly argues that it is entitled to summary judgment on Mr. Macaluso's strict liability design defect claim because, it believes, under Pennsylvania law, a threshold issue for defective design is whether there is a reasonable alternative design. *See Kordek v. Becton, Dickinson & Co.*, 921 F. Supp. 2d 422, 430 (E.D. Pa. 2013) (noting that the Restatement (Third) of Torts "explicitly requires an inquiry into the existence of a reasonable alternative design" for design defect strict liability claims). Because Mr. Eskra confirmed that he has no opinions regarding a demand for alternative designs for the iPad or its battery management system, Apple argues that this failure is fatal to the design defect claim.

Mr. Macaluso responds that this is an incorrect argument under Pennsylvania state law. This Court agrees. Shortly after *Kordek* was decided, the Pennsylvania Supreme Court declined to adopt the Restatement (Third) of Torts, on which the *Kordek* court had relied. *Tincher*, 104 A.3d at 394–99. Since the holding announced in *Tincher*, courts have expressed doubts as to whether "a reasonable alternative design is, as a legal matter, an absolute prerequisite to a design defect strict liability claim in Pennsylvania." *Knecht v. JAKKS Pac., Inc.*, No. 17-cv-2267, 2021 WL 3722854, at *10 (M.D. Pa. Aug. 23, 2021). Apple cites to no post-*Tincher* case that persuades this Court that evidence of a reasonable alternative design is, strictly speaking, a prerequisite to Mr. Macaluso's design defect claim. In *Tincher* itself, the Pennsylvania Supreme Court recognized that the

"availability of a substitute product" is only one of the "factors relevant to the manufacturer's risk-utility calculus implicated in manufacturing or designing a product." *Tincher*, 104 A.3d at 398; *Lance v. Wyeth*, 85 A.3d 434, 458 n.36 (Pa. 2014) (noting failure of defendant to "cite[] any decision of [the Pennsylvania Supreme Court] making an alternative safer design an absolute prerequisite to any and all design-based claims").

Because the Court is not convinced that Mr. Macaluso is required to identify a reasonable alternative design, the Court will not grant summary judgment on Mr. Macaluso's design defect claim for failure to offer such an alternative.[4]

### E.  Summary Judgment Is Granted on the Breach of Implied and Express Warranties Claim

Finally, Apple argues that Mr. Macaluso's breach of implied and express warranties claim fails because the limited warranty for the subject iPad clearly and effectively disclaims implied warranties and limits non-disclaimed and express warranties to one year.

"Under Pennsylvania law, a manufacturer may disclaim implied warranties." *Kenney v. Watts Regul. Co.*, 512 F. Supp. 3d 565, 586–87 (E.D. Pa. 2021) (citing 13 Pa. Cons. Stat § 2316). Section 2316 of Pennsylvania's commercial code states as follows:

> (b) **Implied warranties of merchantability and fitness.**—Subject to subsection (c), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."

> (c) **Implied warranties in general.**—Notwithstanding subsection (b):

> (1) Unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like "as is," "with all faults" or other language which in

---

[4]    Although Mr. Macaluso's counsel indicated to the contrary at oral argument, it appears from supplemental briefing that Mr. Macaluso seeks to preserve his design defect claim.

common understanding calls the attention of the buyer to the exclusion of warranties and makes plain that there is no implied warranty.

13 Pa. Cons. Stat §§ 2316(b)–(c)(1).

Apple contends that it adequately disclaimed implied warranties under Pennsylvania law. Apple's disclaimer adequately waives the implied warranty of merchantability under § 2316(b) because it expressly and conspicuously mentions merchantability. *See Kenney,* 512 F. Supp. 3d at 587. Apple's disclaimer also adequately waives the implied warranty of fitness for a particular purpose in compliance with § 2316(b). Moreover, the disclaimer generally complies with § 2316(c)(1) because the language "APPLE DISCLAIMS ALL STATUTORY AND IMPLIED WARRANTIES, INCLUDING WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE AND WARRANTIES AGAINST HIDDEN OR LATENT DEFECTS, TO THE EXTENT PERMITTED BY LAW,"  Warranty at 1, "makes plain" the exclusion of implied warranties. 13 Pa. Cons. Stat § 2316(c)(1). The exclusions are conspicuous, written in all capitalized font, appearing on the first page of the one-year limited warranty, and prefaced by the underlined heading "Warranty Limitations Subject to Consumer Law." Warranty at 1; *see, e.g., Allen-Myland, Inc. v. Garmin Int'l, Inc.,* 140 A.3d 677, 688–89 (Pa. Super. Ct. 2016) ("Conspicuous terms include the following: (i) A heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font or color to the surrounding text of the same or lesser size[;] (ii) Language in the body of a record or display in larger type than the surrounding text, in contrasting type, font or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language.") (citing 13 Pa. Cons. Stat. § 1201(b)(10)).

31

Apple further argues that it limited any warranties, either express or not disclaimed, to one year. The warranty stated that "IN SO FAR AS SUCH WARRANTIES CANNOT BE DISCLAIMED, APPLE LIMITS THE DURATION AND REMEDIES OF SUCH WARRANTIES TO THE DURATION OF THIS EXPRESS WARRANTY AND, AT APPLE'S OPTION, THE REPAIR OR REPLACEMENT SERVICES DESCRIBED BELOW." Warranty at 1. Because the iPad was purchased in 2016 and the fire occurred in 2020, any un-disclaimed warranties would have expired prior to the event at issue in this litigation.

Mr. Macaluso does not address the legal adequacy of the warranty submitted by Apple. Instead, he argues that Apple has offered no evidence as to how the warranty was communicated to Mr. Macaluso, and without information as to how, when, and if the disclaimer was presented, Apple cannot satisfy its burden that the disclaimer was conspicuous.

At this stage of the litigation, Mr. Macaluso, as the non-moving party, must support his position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). But Mr. Macaluso has not even submitted an affidavit stating that he did not receive the warranty. Nor has Mr. Macaluso proffered himself as a witness ready to testify for the record that he did not receive any notice of an implied warranty disclaimer at the time of the contract. *Hornberger v. Gen. Motors Corp.,* 929 F. Supp. 884, 889 n.5 (E.D. Pa. 1996). He also did not raise objections to the authenticity of an iPad information sheet produced by Apple in discovery directing buyers to Apple's website to view the full terms of the limited warranty. And Mr. Macaluso failed to confront Apple's argument in its supplemental briefing to the summary

judgment motion that the iPad information sheet produced in discovery would have arrived with the subject, newly purchased 2016 iPad.

Without an iota of evidentiary support submitted by Mr. Macaluso, there is no genuine dispute of material fact as to this claim, so the Court will grant summary judgment to Apple on Mr. Macaluso's breach of express and/or implied warranties claim.

CONCLUSION

Even boiling this case down, genuine disputes of material fact abound at this stage of the litigation. For all of these reasons, the Court denies in full Mr. Macaluso's Motion to Preclude Defendant's Experts and denies in part and grants in part Apple's Motion to Exclude Testimony of David Klitsch and Michael Eskra. The Court will deny Apple's Motion for Summary Judgment in part, and grant the Motion for Summary Judgment as to Mr. Macaluso's breach of express and implied warranties claim.

Appropriate orders follow.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE